FRANKFORT LAND COMPANY *v.* JASPER HUGHETT *et al.*

(*Knoxville.* September Term, 1916.)

1. VENUE. Local action. Situs of land.

Under Shannon's Code, section 6121, subsec. 2, providing that all bills to clear up title to lands shall be filed in the county in which the land lies, a suit to recover possession of land and remove clouds from complainant's title is a local action, properly brought in the county wherein the land lies. (*Post, pp.* 40, 41.)

Code cited and construed: Sec. 6121 (S.).

2. VENUE. Land. Codefendants.

Where one owning land in one county brought ejectment against individuals alleged to be trespassers, and against a corporation located in another county which had purchased timber cut during the alleged trespass, but had not received all of such timber, the action was properly brought in the county wherein the land lay, the corporation being an interested party, and a court of equity requiring that all persons interested in the subject-matter shall be made parties. (*Post, pp.* 41-45.)

Cases cited and approved: McCaleb v. Crichfield, 52 Tenn., 288; Brown v. Brown, 86 Tenn., 277; Craig v. McKnight, 108 Tenn., 690; Birdsong v. Birdsong, 40 Tenn., 290.

3. VENDOR AND PURCHASER. Rights of purchasers. Knowledge of defect in title.

Where promoters of a corporation conveyed land to the corporation and a third person as attorney in fact for one promoter joined, but later such third person took an assignment of all the timber rights from the promoters, he was charged with knowledge that all the property had already been conveyed. (*Post, pp.* 45, 46.)

4. VENDOR AND PURCHASER. Rights of purchaser. Innocent purchaser.

Where a deed to land made specific reference to the book and page on which the grantor's deed was recorded, and erroneously

Frankfort Land Co. v. Hughett.

referred to the grantor therein as a corporation when in fact it was a number of individuals, the grantee of the second deed acquired no title. (*Post, pp.* 46, 47.)

5. **ESTOPPEL. Estoppel by conduct. Delay. Claim to land.**

Where a Wisconsin corporation owned land in Tennessee, but for many years had no agent thereon, and merely kept up its possession by a tenant, and its directors only infrequently visited the land, but immediately after a visit brought ejectment to remove the cloud of a trespass, it was not estopped to claim title by the alleged delay in asserting it. (*Post, pp.* 47-50.)

6. **ESTOPPEL. Who may claim estoppel.**

Where, owing to his knowledge of defects in title, the original grantee could not have claimed estoppel as against the true owner, none of his successors could rely on estoppel. (*Post, pp.* 50, 51.)

Case cited and approved: Bank v. Railroad, 128 Tenn., 530.

7. **ESTOPPEL. Who may claim. Trespassers.**

A trespasser and those who connive at the trespass have little standing to invoke the doctrine of equitable estoppel. (*Post, pp.* 51, 52.)

8. **ESTOPPEL. Right to claim. Negligence.**

Those who proceed in acquiring land without ordinary care are not entitled to the benefit of an estoppel. (*Post, pp.* 51, 52.)

9. **LIMITATION OF ACTIONS. Trespass. Rule applicable.**

Since an owner of land suing for timber wrongfully removed may waive the trespass, and recover in *indebitatus assumpsit*, his action is subject to limitation of Shannon's Code, section 4472, of six years, and not of section 4470 of three years, if he waives the tort. (*Post, p.* 52.)

Case cited and approved: Whitaker v. Poston, 120 Tenn., 207.

Code cited and construed: Secs. 4470, 4472 (S.).

10. **ASSUMPSIT, ACTION OF. Damages. Measure.**

In an action for trespass and to recover the value of timber remover during the trespass, where the owner relied on indebitatus

137 Tenn.—3

assumpsit waiving the tort, his damages were properly limited to the mild rule. (*Post*, *p.*. 53.)

Cases cited and approved: Dougherty v. Chestnut, 86 Tenn., 1; Holt v. Hayes, 110 Tenn., 42; Godwin v. Taenzer, 122 Tenn., 101; Moore v. Richardson, 68 N. J. Law, 305.

11. **TRESPASS.**    Liability of joint tort-feasors.    Trespass.

Persons who connived at a trespass by cutting timber were joint tort-feasors and equally liable with the actual trespasser for the value of timber at the time of the conversion. (*Post*, *p.* 54.)

12. **CORPORATIONS.**    Foreign corporation.    Suits.    Venue.

A foreign corporation owning land in a county is entitled to bring ejectment in the county wherein the land lies. (*Post*, *p.* 54.)

Cases cited and approved: Louisville Property Co. v. Mayor & City Council of Nashville, 114 .Tenn., 218; Morgan Bros. v. Coal & Iron Co., 134 Tenn., 228.

---

FROM MORGAN.·

.Error to the Chancery Court of Morgan County. —A: H. ROBERTS, Chancellor.

JAMES A. MONROE, for plaintiff.

MARTIN & TRIMBLE, for defendant Loomis & Hart .Mfg. Co.

DAVIS & JONES, for defendant Hughett.

MR. JUSTICE GREEN delivered the opinion of the Court.

The Frankfort Land Company filed its original bill in ejectment May 23, 1910, in the chancery court of Morgan county, against defendants Jasper Hughett, J. E. Rich, and C. A. Quinn, to recover two tracts of land in Morgan county, to remove clouds upon its title, and seeking a decree for the value of timber cut and taken away.

At the May term, 1911, of the said court the bill was amended by making the Loomis & Hart Manufacturing Company a party defendant. This amendment was made by permission of the court, and was done by interlining the name of the said corporation in the caption of the bill as a defendant and by an order providing that the charges of the bill should be taken as having been made against the said defendant corporation.

A number of additional amendments were made to the bill during the progress of the litigation, some of which will be noticed later.

Neither defendants Hughett nor Rich were residents of Morgan county. C. A. Quinn was a resident of Morgan county, but no process was ever served on him, and as to him the suit was later dismissed. The Loomis & Hart Manufacturing Company, was a Tennessee corporation with its *situs* at Chattanooga. Process was issued for said company to Morgan county and returned "Not to be

found." Counterpart process then issued to Hamilton county, which was duly served.

Defendants Hughett and Rich answered the original bill, and likewise answered the amended bills, and neither of them raised any question upon the jurisdiction of the court.

The Loomis & Hart Manufacturing Company filed a plea to the jurisdiction. Issue was joined on this plea, and a statement of facts agreed to upon which to try the issue made upon said plea in abatement. Later the complainant obtained permission of the court to withdraw its replication to the plea in abatement, and made a motion that said plea be overruled as insufficient. Upon consideration of the said motion, the chancellor adjudged the plea in abatement to be insufficient, and it was overruled and disallowed and the Loomis & Hart Manufacturing Company required to answer the bill, which it accordingly did, and also answered amended bills later filed.

Considerable testimony was taken, a reference ordered, and upon final hearing the chancellor rendered a decree against all the defendants on account of timber taken from the land described. Defendants Hughett and Loomis & Hart Manufacturing Company appealed to this court, and have assigned errors. The complainant has likewise filed the record for writ of error and assigned errors; it being dissatisfied with the amount of damages allowed to it by the chancellor.

The Loomis & Hart Manufacturing Company, assigns as error the action of the chancellor in disallowing and overruling its plea to the jurisdiction, and this is the first question to be determined in disposing of the case.

· The plea in abatement filed by the Loomis & Hart Manufacturing Company is to this effect:

That it is a Tennessee corporation with its principal place of business in Hamilton county, Tenn., that it was not originally named as a party defendant, but was brought in by amendment to the bill, that none of those named as defendants, except C. A. · Quinn, were residents of Morgan county, and that no process was ever served on Quinn and the suit was dismissed as to him. It is further set out that said defendant was not served with process in Morgan county, and that it never has had any office or agency or agent in Morgan county. It is averred that this defendant never personally nor by its officers, agents, employees, or servants entered upon the land described in the bill, nor took possession thereof, nor did it ever assert any title thereto or right therein; and it was said that the only cause of action which complainant had against this defendant, if it had any, was purely transitory and grew out of the fact that the defendant at one time purchased certain sawlogs, believing that the person from whom it bought them was the true and lawful owner thereof, but which logs the complainant now claims were cut from the land sued for. It was

further stated that the charges to the effect that defendant had trespassed upon complainant's land and asserted some right or title therein, and did things that would operate as a cloud upon complainant's title, were not made with the expectation or intention of proving any of them as to this defendant, but with the wrongful purpose of procuring jurisdiction of this defendant in the chancery court of Morgan county. It was also averred that defendant Quinn, the only resident of Morgan county named, was neither a necessary nor proper defendant, and was named as such for the fraudulent purpose of providing a nominal defendant in Morgan county to enable that court to obtain jurisdiction of other defendants in a transitory action. This plea was properly verified, and complainant filed a replication thereto, as heretofore stated.

After filing its replication, complainant and the Loomis & Hart Manufacturing Company entered into a stipulation of facts with reference to the plea in abatement, which contains the following statements relevant to the proper disposition of the plea:

"Complainant, Frankfort Land Company, is a Wisconsin corporation, having its principal place of business at Sturgeon Bay, Wisconsin."

"Of the defendants named in the bill, Jasper Hughett is a resident of Scott county, Tennessee, and was duly served with process in said county, J. E. Rich is a resident of Cumberland county, Tennessee, and was duly served with process in that

county, C. A. Quinn is a resident of Morgan county, Tennessee, and was never served with any process and the bill was, by complainant's solicitor, dismissed as to him some months ago, and the defendant Loomis & Hart Manufacturing Company is a Tennessee corporation, having its situs in Hamilton county, Tennessee. It was served with process in Hamilton county, Tennessee."

"That defendant Loomis & Hart Manufacturing Company never personally, nor by its officers, agents, employees, or servants, took possession of any of the lands that are described in complainant's bill, and said defendant does not now and never did claim any part of said land or any interest therein."

"Complainant's cause of action against the Loomis & Hart Manufacturing Company grows out of the fact that said company at one time purchased from defendant J. E. Rich certain sawlogs which were cut from the lands described in the original bill. Said J. E. Rich, who claimed to be the owner of said timber, felled the trees and converted them into sawlogs, and, either by himself or his employees, put said logs into the streams of Obed river and Clear creek, and after they were thus placed in said streams the Loomis & Hart Manufacturing Company sent a man on the land to count and inspect and then paid for the said sawlogs. Said company also placed its brand on said logs. The land described in the bill lies partly in Cumberland and Morgan counties and defendant company . . .

Other facts in this connection appearing in the record are these:

The Loomis & Hart Manufacturing Company purchased from J. E. Rich, November 8, 1907, 410,000 feet of logs, to be delivered in the bed or channel of Big Clear creek, below what is known as the Lea land. This contract was in writing and provided as to the lengths in which the logs were to be cut, and provided that the agent of the Loomis & Hart Manufacturing Company might make inspection of the measurements on the ground and set out the prices to be paid.

While this paper writing does not describe any part of the land of the complainant, it is deposed by Mr. Webb, an officer of the Loomis & Hart Manufacturing Company, that the contract specifically referred to the timber on the land of the complainant, for the value of which this suit is brought. The master found that this timber was sold to the Loomis & Hart Manufacturing Company standing in the tree, and there is no exception to this finding. It is obvious, moreover, from the record, that the agent of the Loomis & Hart Manufacturing Company necessarily went upon the land of the complainant to make his measurements.

The aforesaid timber deed, or timber contract, called for the delivery by Rich to Loomis & Hart Manufacturing Company 410,000 feet of logs, as before stated. At the time Loomis & Hart Manufacturing Company was sued there had been a delivery of

285,000 feet of logs; so that the said defendant company had a claim to 125,000 feet of timber still standing in the tree on the lands of complainant at the time of the suit.

J. E. Rich, the vendor of the Loomis & Hart Manufacturing Company, claimed title to this timber through a contract or deed thereto from G. A. Dreutzer. Dreutzer claimed title to the timber through a deed from the gentlemen who organized the Frankfort Land Company. Further reference will be made to the two deeds just mentioned.

The complainant in this suit sought to recover the land and the value of the timber cut and to remove the claims of all parties with reference to this land, or the timber thereon, as clouds upon its title. The principal purposes of the bill were to establish complainant's right of possession, recover the land, and remove clouds upon complainant's title. The recovery of damages for timber cut was incidental.

Rich had entered upon the land, and was there cutting timber at the time the suit was brought.

This suit, in so far as it sought to recover possession of the land and to remove clouds upon complainant's title, was a local action and was properly brought in Morgan county, where part of the land lay. Shannon's Code, section 6121, subsec. 2. The jurisdiction of the suit being thus fixed, the chancery court of Morgan county had authority to give incidental relief for the value of timber cut and removed.

In so far as Rich was concerned, he having entered upon part of the land and holding a deed to certain timber thereupon, the suit was, of course, properly brought in Morgan county. Likewise the suit was properly brought in Morgan county, as to defendant Hughett, as will appear later, he being a real party in interest under the deed to Rich.

The fundamental relief sought by the complainant was the cancellation of the deed of the land company, or its promoters, to Dreutzer. Rich and the Loomis & Hart Manufacturing Company both derived their rights from Dreutzer. If the complainant succeeded in having the Dreutzer deed declared invalid, then, the question of estoppel out of the way, complainant had a right of action against the Loomis & Hart Manufacturing Company for the value of complainant's timber, which said company had obtained. The Loomis & Hart Manufacturing Company was thus interested in the subject-matter of this suit. The complainant could obtain no relief against said company unless the Dreutzer deed was invalidated. If the Dreutzer deed was set aside, then the Loomis & Hart Manufacturing Company was liable to the complainant.

It inferentially appears that J. E. Rich was insolvent, likewise Dreutzer. It was therefore necessary for the complainant to join Loomis & Hart Manufacturing Company to this suit, in order to recover the value of the logs said company had procured, or else another suit against Loomis & Hart Manufac-

turing Company involving the same questions must have been brought by the complainant.

A court of equity "requires that all persons interested, either legally or beneficially, in the subject-matter of the suit, shall be made parties to it, either as complainants or as defendants, so that there may be a decree that will bind them all. By this means the court is enabled to make a complete decree between all the parties interested in the controversy, and thus not only to prevent further litigation by taking away the necessity of a multiplicity of suits, but to make it perfectly certain that no injustice has been done to any party interested in the subject-matter of the suit." Gibson's Suits in Chancery, section 38.

"The general rule is that all persons who have a legal or beneficial interest in the subject-matter of the suit ought to be before the court either as complainants or defendants." Story, Equity Pleading, section 77.

The foregoing rule has been approved by this court in *McCaleb* v. *Crichfield,* 5 Heisk., 288, *Brown* v. *Brown,* 86 Tenn., 277, 6 S. W., 869, 7 S. W., 640, and many other cases.

It has been said that the reason for the rule is found in the anxiety of the court to do justice among all parties having an interest in the subject-matter or object of the suit, whether that interest be mediate or immediate, present or future, for the purpose of preventing future controversy and litigation. *Craig*

v. *McKnight,* 108 Tenn., 690, 69 S. W., 22; *Birdsong* v. *Birdsong,* 2 Head., 290.

We are therefor of opinion that the chancellor correctly held the plea in abatement filed by the Loomis & Hart Manufacturing Company to have been insufficient. Likewise, if we test the plea by the agreement of counsel and the proof and try it as if at issue, it must be overruled. The Loomis & Hart Manufacturing Company was certainly interested in the subject-matter of this litigation, if indeed its claim for the 125,000 feet of timber still standing did not constitute a cloud upon complainant's title. Being an interested party, and the jurisdiction of the court for the principal object of the suit being clear, the court properly brought in this defendant corporation to settle all controversies and to prevent further litigation.

Passing to the merits of the case, it first becomes necessary to determine the validity of Dreutzer's claim to the timber on complainant's lands. As before stated, all the other defendants claim under Dreutzer.

It appears that on July 11, 1889, Young and Huffaker sold the tracts of land here involved to C. C. Way, A. F. Dreutzer, O. E. Dreutzer, Samuel A. Nelson, and John Anderson.

On October 21, 1889, Youngs & Fetzer acquired a five twenty-fourths interest in this land. On May 21, 1890, Youngs & Fetzer acquired some further interest.

Some additional conveyances of different interests in the tract were made, and on October 31, 1889, the parties owning title to the land made a deed of the timber thereon, or certain tracts of the timber thereon, to Youngs & Fetzer.

This interest in the timber was later assigned to G. A. Dreutzer, on August 2, 1892. The said timber deed to Youngs & Fetzer was, however, not recorded until December 19, 1893.

The timber deed was defectively acknowledged, and was not entitled to registration at all, but, as a matter of fact, it was entered upon the registrar's books.

Prior to the attempted registration of the timber deed, the parties owning the land made a deed carrying all right, title, and interest, with no exception of timber rights, to the Frankfort Land Company, the complainant in this suit. The last deed, made March 24, 1890, was duly acknowledged, and was recorded May 19, 1890, more than three years before the timber deed to Youngs & Fetzer was recorded, and more than two years before Youngs & Fetzer assigned their timber rights to G. A. Dreutzer.

In this deed conveying the entire property to the Frankfort Land Company both Youngs and Fetzer joined. Likewise G. A. Dreutzer executed said deed as attorney in fact for C. C. Way.

G. A. Dreutzer therefore had full knowledge of the fact at the time he took the assignment of the timber rights from Youngs & Fetzer that Youngs & Fetzer had conveyed all their interest in this land to the

Frankfort Land Company. G. A. Dreutzer is charged with this knowledge, both by registration of the deed to the Frankfort Land Company, and such knowledge is more directly brought home to him by the fact that he was a party to the deed itself.

In addition to the foregoing, the complainant refers to pleadings filed by G. A. Dreutzer in two or three suits, in all of which pleadings Dreutzer recognizes the title of the Frankfort Land Company to the land, and complainant relies on these matters as an estoppel specially pleaded.

It follows, as a matter of course, that G. A. Dreutzer took no title to the timber involved by reason of the assignment of the Youngs & Fetzer deed or rights to him.

Dreutzer conveyed this timber to Rich May 15, 1906. Dreutzer's contract with Rich, or his deed to the timber, recited that it was the timber conveyed to Youngs & Fetzer October 31, 1889, by deed of the Frankfort Land Company, recorded in Book F, Volume 2, pages 58 and 59, in the registrar's office of Morgan county. A special reference was thus made to Dreutzer's alleged title paper in his deed to Rich. If Rich had made any examination, he would have seen that the deed referred to was not the deed of the Frankfort Land Company at all, but was a conveyance by O. E. Dreutzer, A. F. Dreutzer, S. A. Nelson, and John Anderson, the promoters of the Frankfort Land Company. Reference was also made in Dreutzer's deed to Rich to the assignment of their

timber rights by Youngs & Fetzer to G. A. Dreutzer
August 2, 1892. The slightest investigation on the
part of Rich would have disclosed that Youngs &
Fetzer conveyed all their interest in this land to the
Frankfort Land Company, as stated heretofore,
March 24, 1890, more than a year before they under-
took to convey or assign the timber on said land to
G. A. Dreutzer.

It does not appear that defendant Hughett or the
Loomis & Hart Manufacturing Company made any
investigation whatever of Rich's title to the timber
when they purchased from him. They seemed to
have assumed that he had a good title, and they pro-
ceeded to trade with him on that assumption.

Obviously none of the defendants acquired any re-
cord title to this timber. The title of the Frankfort
Land Company was clear, and the records showed
that neither Dreutzer nor Rich had good title.

It is insisted, however, on behalf of the defendants,
that the Frankfort Land Company is estopped to as-
sert title to the timber by reason of the course of
its dealings with Dreutzer and with reference to the
land.

The Frankfort Land Company was a Wisconsin
corporation. It was organized by citizens of Wiscon-
sin and neighboring States with the idea of promoting
a German colony on the lands purchased. A town
called Frankfort was laid out and other steps taken
toward founding the colony.

When the company was organized, about 1890, the record indicates that there was some activity among its stockholders toward carrying out the scheme for which it had been formed. G. A. Dreutzer, while never a stockholder of the company, was its local agent in Tennessee for a few years and lived at Frankfort. It is not clear just what his duties were, nor how long he represented the company. It is certain, however, that he became involved in litigation with the company in the early 90's, and has not represented it as an agent for a great many years.

With the exception of G. A. Dreutzer, the Frankfort Land Company had no agent or representative in Tennessee until about the time this litigation began, except a tenant on the land, who kept up the company's possessions.

All the stockholders and officers of this company lived in Northern States—Wisconsin, Minnesota, and Illinois. None of the officers or directors resided in Tennessee, and the testimony of these officers is that they had no notice of the cutting of the company's timber until the summer of 1908, when the president of the company came to Tennessee to look after the property. It is undoubtedly true, on this record, that the company paid little attention to the property for many years except to keep up its possessions.

G. A. Dreutzer testifies that the officers of the company and its stockholders knew all about his claim to the timber, were aware that he was cutting the timber, and recognized his rights thereto. He says

that they frequently visited Tennessee and stayed at his house, that he had a mill sawing up the timber in plain view, and that no objection was ever made to his use of the timber, nor was his right so to use it denied prior to this suit.

These statements of Dreutzer's are contradicted by the depositions of a number of the stockholders and directors of the company taken in the case.

Miss Dora Dreutzer, the daughter of G. A. Dreutzer, likewise testifies that those interested in the land company were aware of her father's claims to the timber and that they recognized such claims. She undertakes to give the names of a number of persons connected with the Frankfort Land Company who, she says, visited her father's home at Frankfort and saw the mill in operation. She is, however, not able to say positively that any of these persons, with perhaps one exception, were officers or directors of the Frankfort Land Company. It may be, from her testimony, that these visitors were merely stockholders. She does not know their relation to the company.

"Notice to promoters, or to individual corporators or stockholders, or knowledge possessed by them, where there are other stockholders who have no knowledge, is not notice to the corporation, unless the persons having the knowledge are also officers. . . ." Clark & Marshall on Corporations, vol. 3, p. 2195.

Moreover, neither G. A. Dreutzer nor his daughter fix the dates of these alleged visits of the persons interested in or connected with the Frankfort Land

137 Tenn.—4

Company to Tennessee. These persons may have been here while Dreutzer was acting as agent for the concern, and supposed he was operating the mill for the company's purposes. When they came does not appear. There is nothing to indicate that any of them ever came to Tennessee after the deed to Rich, with the exception of the president, whose visit in 1908 has been mentioned.

Aside from the foregoing considerations, however, we think no estoppel could have arisen in favor of Dreutzer himself, and therefore those claiming under him cannot rely on any such estoppel.

We laid it down as a fundamental rule, in *Bank* v. *Railroad*, 128 Tenn., 530, 161 S. W., 1144, that a party must proceed in good faith in order to be allowed the benefits of an estoppel.

It can scarcely be said that Dreutzer acted in good faith when he assumed to own this timber or when he conveyed it to Rich. He had joined in a deed conveying all interest in the land to the Frankfort Land Company, and he had recognized the title of the Frankfort Land Company by his pleadings filed in two or three suits.

Dreutzer does undertake to say that it was understood at the time the promoters made the deed to the Frankfort Land Company that the timber was excepted. If this evidence were competent, it is nevertheless contradicted by the testimony of all the officers and stockholders of the land company whose depositions have been taken.

It is insisted that the delay of the land company to take action after the visit of the president to Tennessee in the summer of 1908 should work an estoppel as to its demands against the defendant Manufacturing Company, Rich, and Hughett.

On his visit to Tennessee the president said that he noticed for the first time the depredations on the timber and saw the felled logs. It does not appear, however, that he knew who was claiming the logs, or by whom they had been cut. He did nothing while in Tennessee, but upon his return to Wisconsin, had a meeting of his stockholders, or directors, the following winter and instituted proceedings in Tennessee, under authority of such meeting, about eight months after his visit here.

A pure trespasser and those who connive at such trespass have little standing to invoke the doctrine of equitable estoppel in their behalf. Moreover, those who proceed without ordinary care are not entitled to the benefit of an estoppel, as held by this court in *Bank* v. *Railroad,* supra.

As we have heretofore stated, neither Hughett nor the Loomis & Hart Manufacturing Company claim to have made any investigation of Rich's title to this timber. They merely assumed such title to have been vested in him. Persons are not justified in dealing in real estate, nor timber standing thereon, in such a manner as this.

The land company knew nothing of Rich's claim, according to the weight of proof, nor is it contended

that they knew anything of the claim of Hughett, or of the defendant manufacturing company to this timber. The land company did nothing to mislead any of these defendants after their rights herein were supposed to have accrued, unless it be asserted that the delay of eight months in bringing suit, after the visit of the president to Tennessee, amounted to this. We do not think this delay, under the circumstances of this case, can be made the basis of an estoppel, particularly when defendants have been so negligent themselves.

It results, in our opinion, that the chancellor correctly held Hughett and the Loomis & Hart Manufacturing Company to accountability for the logs obtained by them.

It is insisted in behalf of the Loomis & Hart Manufacturing Company that it should be relieved of part of its liability here asserted by reason of the three-year statute of limitations (Shannon's Code, section 4470). The complainant, however, insists that the six-year statute (Shannon's Code, section 4472) is applicable to this case, and the chancellor so held.

We think the chancellor was correct. An owner of land suing for timber wrongfully taken from his land may waive the tort or trespass and recover in *indebtitatus. assumpsit,* to which latter action the six-year statute alone applies. Such was the holding of this court in *Whitaker* v. *Poston,* 120 Tenn., 207, 110 S. W., 1019.

The complainant files this record for writ of error and insists that the chancellor erred in assessing damages against the Loomis & Hart Manufacturing Company according to the mild rule, and in assessing damages against defendant Hughett according to the rule administered in *Dougherty* v. *Chestnut,* 86 Tenn., 1, 5 S. W., 444. It is contended by the complainant that the facts of the case called for an application of the harsh rule, and *Holt* v. *Hayes,* 110 Tenn., 42, 73 S. W., 111, and *Godwin* v. *Taenzer,* 122 Tenn., 101, 119 S. W., 1133, are relied on.

This contention of the complainant cannot be upheld; for the complainant has deliberately elected to waive the tort in this case and has expressly done so. The harsh rule is inflicted to punish the tort or wrongdoing of the trespasser. When such tort is waived and the complainant treats the entry and taking of the timber as though under contract and sues in *assumpsit,* there is no place for an application of the harsh rule. Such complainant is only entitled, under such circumstances, to recover the value of the property at the time of the conversion. This conclusion is logically incontrovertible, and is sustained by *Moore* v. *Richardson,* 68 N. J. Law, 305, 53 Atl., 1032.

The Loomis & Hart Manufacturing Company bought this timber standing in the tree, and Hughett, according to his sworn pleading in another case, supplied money to Rich to buy the timber from Dreutzer and get it out.

Both these defendants, therefore, connived at and were parties to the trespass of Rich, and are joint tort-feasors with Rich. All of these parties, in an action of assumpsit, are liable for the value of the timber in the tree at the time it was converted.

The damages against the Loomis & Hart Manufacturing Company were determined by the correct measure. The damages against Hughett, for the reasons heretofore stated, should be determined by the same measure, and Hughett's assignment of error to this effect is accordingly sustained.

We must overrule the assignment of error made by the Loomis & Hart Manufacturing Company to the effect that defendant, as a foreign corporation, is not entitled to bring this suit. This contention is overthrown by *Louisville Property Company* v. *Mayor & City Council of Nashville*, 114 Tenn., 218, 84 S. W., 810, and *Morgan Bros.* v. *Coal & Iron Company*, 134 Tenn., 228, 183 S. W., 1019.

Let a decree be entered in accordance with this opinion and the cause remanded for further proceedings.

The costs of this court will be divided equally between the Frankfort Land Company, Hughett, and the Loomis & Hart Manufacturing Company.