498

ILLINOIS ADDRESSOGRAPH MANUFACTURING COMPANY, FORMERLY ADDRESSOGRAPH COMPANY (ILLINOIS), PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 49204.   Promulgated October 31, 1934.

*Leo H. Hoffman, Esq.*, for the petitioner.
*John D. Kiley, Esq.*, for the respondent.

500

OPINION.

SEAWELL: In filing the stipulation of facts, the parties thereto reserved the right to object to the relevancy or materiality of any facts set forth therein either upon trial or on argument. On brief counsel for the petitioner contends that only so much of the stipulation of facts as relates to the time and place of incorporation of the petitioner and the Delaware corporation; the acquisition of assets and assumption of liabilities of the petitioner by the Delaware corporation; the dates on which the returns of the petitioner were filed;

the date on which the deficiency notice was sent; the officers of the Delaware corporation in 1929 and 1930; the making of jeopardy assessments in 1930 for the taxable years; and the amount paid on the assessments, are material and relevant, and moves that the remaining facts having to do with audits, conferences, waivers, including the circumstances under which they were filed, etc., all of which have some bearing on the estoppel question, be stricken from the record as immaterial and irrelevant. The motion is denied.

The statutory period of limitation for assessment of the deficiencies for the respective taxable years expired March 16, 1929, and May 15, 1929, dates prior to the mailing of the deficiency notice. Sec. 277 (a) (1) and (2), Revenue Act of 1926. Whether the deficiency notice was timely depends upon the sufficiency of the several waivers to extend the time for assessment. The contention of the petitioner is, in substance, that the instruments relied upon by the respondent are not its waivers, but waivers of the Delaware corporation, a taxpayer separate and distinct from it. The respondent relies upon equitable estoppel.

In *Dickerson* v. *Colgrove*, 100 U. S. 578, the Court said:

> The estoppel here relied upon is known as an equitable estoppel, or estoppel *in pais*. The law upon the subject is well settled. The vital principle is that he who by his language or conduct leads another to do what he would not otherwise have done, shall not subject such person to loss or injury by disappointing the expectations upon which he acted. Such a change of position is sternly forbidden. It involves fraud and falsehood, and the law abhors both. This remedy is always so applied as to promote the ends of justice. It is available only for protection, and cannot be used as a weapon of assault. It accomplishes that which ought to be done between man and man, and is not permitted to go beyond this limit. It is akin to the principle involved in the limitation of actions, and does its work of justice and repose where the statute cannot be invoked. * * *

In a later case, *Stone* v. *Bank of Commerce*, 174 U. S. 412, the same Court remarked:

> An equitable estoppel which is to prevent the State from receiving the benefit of an exercise of its power to alter the rule or rate of taxation for all the time of the existence of a business corporation, should be based upon the clearest equity. It is fitly denominated an equitable estoppel, because it rests upon the doctrine that it would be against the principles of equity and good conscience to permit the party against whom the estoppel is sought to avail himself of what might otherwise be his undisputed rights. * * *

The Court of Claims, in *Naumkeag Steam Cotton Co.* v. *United States*, 2 Fed. Supp. 126; certiorari denied, 289 U. S. 749, after reviewing the authorities on the question of estoppel, said:

> The doctrine of equitable estoppel is predicated upon the fact " that it would be unconscionable to permit a person to maintain a position inconsistent with one in which he has acquiesced or of which he has accepted any benefit." If a

person is induced by another's acts and conduct to do what he would not otherwise have done, or, as is said, if he abstained from doing what he would have done, the person inducing such conduct may not suddenly change his attitude to the injury of the other.

In *Lucas* v. *Hunt*, 45 Fed. (2d) 781, Hunt, formerly president of a corporation and one of its liquidators in dissolution proceedings, signed a waiver extending the period for assessment of taxes against the corporation after the expiration of the statutory period of three years within which the officers could legally act for the corporation. In its decision estopping Hunt from denying the validity of the waiver, the court remarked:

\* \* \* We are of opinion that Hunt by signing the waiver estopped himself to question its validity, with the result that he was bound to respond to the assessment to the extent of funds in his hands which belonged to the dissolved corporation taxpayer. The circumstances all show that the commissioner relied on the waiver and is therefore entitled to claim the equitable estoppel asserted by counsel in his behalf.

In other cases the courts have estopped taxpayers from denying the validity of waivers on which the Commissioner relied. *Loewer Realty Co.* v. *Anderson*, 31 Fed. (2d) 268; *Liberty Baking Co.* v. *Heiner*, 37 Fed. (2d) 703; *Trustees for Ohio & Big Sandy Coal Co.* v. *Commissioner*, 43 Fed. (2d) 782; *Commissioner* v. *New York Trust Co.*, 54 Fed. (2d) 463; *Wonder Bakeries Co.* v. *United States*, 6 Fed. Supp. 228; *Warner Collieries Co.* v. *United States*, 63 Fed. (2d) 34. The returns of the petitioner for 1924 and 1925 were filed and audited under the name of "Addressograph Company." Notwithstanding the change of its name in 1927 to " Illinois Addressograph Manufacturing Co." and the organization at that time of the "Addressograph Company " under the laws of Delaware, the petitioner, directly or through its attorney in fact and counsel in these proceedings, held numerous conferences with representatives of the respondent respecting the correct tax liability of the petitioner; received letters from the respondent with reference thereto; and filed refund claims and letters of protest on proposed deficiencies with the respondent, all under its original name. True it is that the return of the petitioner for the period January 1 to June 12, 1927, showed a change of its name, yet thereafter the petitioner, in numerous ways, indicated willingness to have its tax liability for 1926 and prior years determined under its original name. Such notice of a change of corporate name is not controlling. *Warner Collieries Co.* v. *United States, supra.*

The Delaware corporation was not organized until 1927, and had no tax liability to adjust or pay for 1924 and 1925, the years involved here. Harvey, who signed the petitioner's return for 1925

as assistant treasurer and who occupied the same position with the Delaware corporation, is charged with knowledge of this fact. If it were Harvey's intention to furnish the respondent 1924 and 1925 waivers of the Delaware corporation, instead of the petitioner, it would, indeed, be difficult to conclude that the transaction was free from fraud. Clearly, the use of the seal of the Delaware corporation was a mistake. In any event, the statute requires only " consent ", *Liberty Baking Co.* v. *Heiner, supra; Loewer Realty Co.* v. *Anderson, supra;* and corporate waivers without seals have been held to be valid. *Pictorial Printing Co.*, 12 B. T. A. 1407; reversed on other grounds, 38 Fed. (2d) 563; *Panther Rubber Manufacturing Co.*, 17 B. T. A. 310. Cf. *Panther Rubber Manufacturing Co.* v. *Commissioner*, 45 Fed. (2d) 314.

The waivers were furnished by the petitioner for the purpose of obtaining extensions of the periods of limitation; they were relied upon by the respondent for that purpose; and the petitioner received and accepted the benefits of the waivers. Under the circumstances, we think it would be unreasonable to allow the petitioner to repudiate the instruments. See *Fidelity Storage Corporation*, 18 B. T. A. 517, and *Charles S. Rauh*, 22 B. T. A. 662.

Reviewed by the Board.

*Decision will be entered for the respondent.*

---

MURDOCK, concurring: Although I agree that the consents extended the statutory period for assessment, I do not agree that the effectiveness of the consents depends upon equitable estoppel. The question of whether or not an equitable estoppel has been established is not to be decided by considering only such general principles as are quoted in the prevailing opinion. Cf. *Tide Water Oil Co.*, 29 B. T. A. 1208. There are certain essentials of an equitable estoppel, all of which must be present in order to estop a party to a proceeding. The following brief statement of these essentials will suffice for present purposes: (1) a misrepresentation or concealment of a material fact; (2) this fact must be known to the party estopped; (3) the person claiming the benefit of the estoppel must have been in ignorance of the truth of this fact at the time of the misrepresentation or concealment, at the time that he acted upon the fact, and until it was too late to change his action; (4) the misrepresentation or concealment must have been done with the intention or expectation that it would be acted upon by the other party or, under such circumstances, that it was natural or probable that it would be acted upon; (5) the fact must have been relied upon and acted upon by the other party; (6) his action must have changed his position

for the worse. Bigelow on Estoppel, p. 437; Pomeroy's Equity Jurisprudence, 4th ed. vol. 2, par. 805; Bouvier's Law Dictionary and Words and Phrases, tit. " Estoppel "; *Howard Sheep Co.*, 1 B. T. A. 966; *Ergenbright* v. *Henderson*, 72 Kan. 29; 82 Pac. 524. It has been held, in connection with requirement (3), that the deceived party must not only not know the fact, but must have had no convenient or ready means of acquiring knowledge of the fact. *Brant* v. *Virginia Coal & Iron Co.*, 93 U. S. 326. Furthermore, the deceived party must have exercised reasonable diligence under the circumstances to learn the truth. *Bailey* v. *Lisle Mfg. Co.*, 238 Fed. 257. The prevailing opinion does not indicate that due consideration has been given to the question of whether or not all of the essentials of an estoppel are present in this case. It fails to point out precisely what the fact was which was misrepresented or concealed and upon which the Commissioner relied to his disadvantage.

The Commissioner apparently seeks to estop the petitioner to deny that the consents which the Commissioner relied upon were in fact the consents of this petitioner. The rationale of this contention would seem to be that the petitioner, in order to deceive the Commissioner, had the Delaware corporation execute the consents, and the Commissioner, not knowing that there were two corporations having similar names and believing that the consents filed had been executed by the petitioner, relied upon those consents until after the statutory period for assessment had expired. There could be no estoppel based upon such a contention if, under the circumstances, a reasonably prudent person, acting with such care as he might be expected to exercise in an important matter, would not have been misled. *Bailey* v. *Lisle Mfg. Co.*, *supra*; *Frankfort Land Co.* v. *Hughett*, 137 Tenn. 32; 191 S.W. 530; *Fourth N.B.* v. *Nashville, C. & St. L. Ry. Co.*, 128 Tenn. 530; 161 S.W. 1144; *Southwestern Investment Co.*, 19 B. T. A. 30. The petitioner, in its return filed for 1928, specifically called the attention of the Commissioner to the change in its name, and the Commissioner's letter of February 11, 1930, clearly indicates that he then knew of the existence of two corporations having similar names. But perhaps the Commissioner in his consideration of prior tax liability ought not to be charged with knowledge of the change in name furnished in a return for a later year, even though that information came to him more than a year before the expiration of the assessment period for the earlier taxes, and, of course, on February 11, 1930, it was too late to assess unless the consents were valid. Aside from these circumstances, however, there was another circumstance which a reasonably prudent man would not have overlooked and which precludes the Commissioner from successfully raising the defense of estoppel in connection with

these consents. The Commissioner knew all along that the taxpayer was an Illinois corporation, yet each of the consents upon which he relies was clearly impressed with a seal which plainly showed that it was the seal of a Delaware corporation. The seals were placed in accordance with the instructions on the forms supplied by the Commissioner. Reasonable diligence upon his part in the examination of these documents would have disclosed the fact that the seal was not that of the taxpayer and he must be charged with knowledge of that fact. He knew that he wanted consents from an Illinois corporation and that he did not want consents from a Delaware corporation. Estoppel can not be raised as a defense to avoid the consequences of one's own negligence. *Bailey* v. *Lisle Mfg. Co., supra; Frankfort Land Co.* v. *Hughett, supra; Fourth N.B.* v. *Nashville, C. & St. L. Ry. Co., supra.* The Commissioner has failed to establish his right to estop the petitioner to deny that the consents were its consents or to deny any material fact in the case.

However, it does not follow that the consents were invalid or ineffective to extend the statutory period for assessment of the deficiencies for 1924 and 1925. The Delaware corporation was not organized until 1927 and, of course, had no tax liability or income tax questions for the years 1924 and 1925. The Illinois corporation was the taxpayer, and its duly authorized representative had a number of conferences and communications with the Commissioner in which both parties fully understood that they were dealing with the tax liability of the Illinois corporation for the years 1924 and 1925. The parties apparently disregarded the change in name in these conferences and communications. It seems reasonably clear to me, from a consideration of all of the evidence, that both the taxpayer and the Commissioner intended the consents to be valid consents on the part of the taxpayer to the later assessment of its taxes for the years 1924 and 1925. The name used on these consents was the name which both parties had used at all times theretofore in their negotiations and discussions. The officer who signed these consents on the part of the taxpayer was in fact the assistant treasurer of the taxpayer. The use of the seal of the Delaware corporation on the consents seems to have been an error rather than an attempt on the part of the taxpayer to invalidate the consents which it obviously intended to give. Fraud on the part of the corporation should not be imputed. The statute does not require that there be any seal on a consent, and for present purposes, the seal can be regarded as mere surplusage. Cf. *Pictorial Printing Co.,* 12 B. T. A. 1407; reversed, 38 Fed. (2d) 563. The consents were valid consents in writing and served to extend the period for assessing the deficiencies for 1924 and 1925.

STERNHAGEN, GOODRICH, and LEECH concur in the above.