ROWAN DRILLING COMPANY, TRANSFEREE, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 98532. Promulgated April 17, 1941.

190

*Harry C. Weeks, Esq.*, for the petitioner.
*James H. Yeatman, Esq.*, for the respondent.

**OPINION.**

*Issue I.*

Disney: The petitioner admits that it is a transferee of the transferor, but contends that assessment of the tax liability of the transferor is barred by the statute of limitations by reason of the invalidity of the waiver executed on December 4, 1934, extending the statutory period of two years to June 30, 1935, and that therefore there is no transferee liability against the petitioner. Counsel for the petitioner frankly admits that "under the circumstances present here" the transferee was authorized to act for the transferor and "that the waiver which it executed was valid" and argues upon the same ground that the transferee had the right to have the merits of the case decided under the petition it filed upon the basis of the

deficiency notice mailed on June 19, 1935, to the transferor, which petition was dismissed by the Board on March 13, 1939, for lack of jurisdiction. He quotes a statement appearing in the memorandum accompanying the Board's order of dismissal to the effect that no one authorized to act for the transferor was a party to the proceeding, and contends that, if the Delaware corporation had no authority to file a petition under a deficiency notice sent to the Texas corporation, then the petitioner had no authority to sign the waiver in question here.

Counsel for the petitioner here represented the petitioner in the proceeding dismissed for lack of jurisdiction. The jurisdiction of this Board to redetermine deficiencies is not governed by the same statutory provisions as the limitation period for making assessments and the facts developed in one hearing may be sufficient to deny jurisdiction yet not enough to justify holding that a consent executed by the same corporation is invalid. Under the circumstances, we do not think that the facts and law forming the basis for the order of dismissal control the limitation question in this proceeding. *Wayne Body Corporation*, 22 B. T. A. 401; *Stanley Co. of America*, 26 B. T. A. 705; *Union Shipbuilding Co.*, 43 B. T. A. 1143.

The fact that the consent bears the corporate seal of the petitioner instead of the transferor is not controlling. The statute requires nothing more than a consent (sec. 276 (b)) and waivers executed by a corporation other than the taxpayer have been held to be valid to extend the statutory period for assessment against the taxpayer. *Illinois Addressograph Manufacturing Co.*, 31 B. T. A. 498, and cases cited therein on the point. The transferor here transferred all of its assets to the petitioner in 1934 and then dissolved. The transfer did not involve a change in name of the corporation or a change of officers, directors, or stockholders. Except for a change in the state of incorporation, there was no alteration in the identity of the corporation. A. H. Rowan, who signed the waiver, was vice president, manager, and a director of each corporation. He testified that in signing the consent he was acting for and on behalf of the Delaware corporation, the transferee. Little weight may be given such testimony in view of the fact that the Delaware corporation was not organized until 1934 and accordingly was not a taxpayer having tax liability to settle for 1932. To have executed a consent for a year for which there was no tax liability would have been a futile act. No contention is made that the consent was not intended to extend the statutory period for assessment of 1932 income tax of a corporate taxpayer and we think that taxpayer was the Texas corporation, the transferor. Under the circumstances, it seems clear that the seal of the Delaware corporation was affixed to the consent

by mistake. See *Crown Willamette Paper Co.* v. *McLaughlin*, 81 Fed. (2d) 365; certiorari denied, 298 U. S. 674.

At the date of the execution of the waiver the transferor corporation was still in existence for the purpose of the execution of an instrument, for under the Texas statute the existence of a corporation is continued for three years after its dissolution for the purpose of enabling those charged with the duty to settle up its affairs. Rev. Civ. Stat., Texas 1925, Vernon's Texas Stat. 1936, art. 1389. The waiver was executed within one year after dissolution of the transferor corporation, and by a vice president, one of those charged with the duty of settling up its affairs. We hold that the waiver was that of the transferor corporation, and operated to extend the statutory period for assessment against the transferor until June 30, 1935.

The deficiency notice to the transferor was mailed within that period, on June 19, 1935. Within 90 days thereafter, on September 16, 1935, a "proceeding in respect of the deficiency" was placed on the docket of the Board of Tax Appeals. That proceeding suspended the running of the statute of limitations on the making of the assessment until it became final by dismissal on March 13, 1939, and for a period of 60 days thereafter. Section 277, Revenue Act of 1932.[1] Prior to the expiration of such period, on April 19, 1939, the notice of transferee liability was mailed and the present proceeding was instituted, on May 15, 1939. We hold that the transferee liability of the petitioner is not barred by the statute of limitations.

## *Issue II.*

The petitioner argues that, even though the statute of limitations does not bar assessment of transferee liability, the amount thereof is limited to the original deficiency of $4,616.84. In other words, petitioner contends that the respondent has no right, by affirmative pleading filed in a transferee proceeding, to ask for a deficiency against the taxpayer in excess of the amount theretofore assessed. It cites no statutory or other authority to support the argument and we find none.

Section 272 (e) of the Revenue Act of 1932 gives the Board jurisdiction to redetermine a deficiency greater than the amount set forth in the notice of deficiency if a claim therefor is asserted by the Com-

---

[1] SEC. 277. SUSPENSION OF RUNNING OF STATUTE.

The running of the statute of limitations provided in section 275 or 276 on the making of assessments and the beginning of distraint or a proceeding in court for collection, in respect of any deficiency, shall (after the mailing of a notice under section 272 (a)) be suspended for the period during which the Commissioner is prohibited from making the assessment or beginning distraint or a proceeding in court (and in any event, if a pro ceeding in respect of the deficiency is placed on the docket of the Board, until the decision of the Board becomes final), and for 60 days thereafter.

missioner at or before the hearing or rehearing. Section 311 provides that the liability of a transferee shall be, with exception not material, "assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this title * * *", and that "*Any* such liability may be either as to the amount of tax shown on the return or as to *any* deficiency in tax." (Italics supplied.)

These unambiguous provisions of the statute require no extended discussion as to their meaning. They set up a procedure for the imposition of an increased deficiency and impose a liability upon a transferee, in general, for taxes of a taxpayer as asserted in any deficiency. The questions at issue here were raised to determine the correct tax liability of the transferor in order to gauge the extent of the liability of petitioner as a transferee. This transferee liability may be asserted without assessment against the taxpayer and it is not essential, under the circumstances here, that the respondent first proceed against the transferor. *J. H. Johnson*, 19 B. T. A. 840; *City National Bank* v. *Commissioner*, 55 Fed. (2d) 1073; *Flynn* v. *Commissioner*, 77 Fed. (2d) 180. We think the statute clearly authorizes the respondent, in a transferee proceeding, to ask for an increased deficiency against the taxpayer and a corresponding increase in the liability of the transferee.

## *Issue III.*

The statement attached to the deficiency notice discloses that the transferor deducted a loss of $794 alleged to have been sustained in 1932 in the drilling of Christian Nos. 2 and 3 and Todd A–2. It computed the loss by deducting from amounts accruing to it in 1932 under the oil payments the cost of drilling the wells. In his determination of the deficiency the respondent converted the loss into gain by valuing the oil payments at 100 per cent of their face amounts and deducting therefrom the cost of drilling the wells. The petitioner alleged as error respondent's action in holding that the oil payments should be valued at their face amounts and that the difference between the face amounts of the oil payments and the cost of drilling the wells should be included in gross income. The second amended answer of the respondent alleges that only the amount accruing to the transferor each year from production is includable in gross income and that the cost of the wells is recoverable by allowances for depletion.

The pleadings thus raise the question of what portion of the face amount of the oil payments should be regarded as income and whether the cost of drilling the wells is recoverable therefrom, treating the difference as gain or loss, according to the result, or through allowances for depletion. Neither party, except respondent and he in the

alternative, contends that the value of the oil payments constitutes gross income. In view of the positions of the parties and our conclusion on the issue raised by the pleadings, it is not necesary for us to find the value of the oil payments or to discuss the propriety of their inclusion in the transferor's income. The cases of *Anderson* v. *Helvering*, 310 U. S. 404, and *T. W. Lee*, 42 B. T. A. 1217, fully support the method advanced by the respondent in his amended answer.

The petitioner argues upon brief that the drilling costs are deducible as ordinary and necessary business expenses, upon the authority of *Edwards Drilling Co.*, 35 B. T. A. 341. There is no proof that the transferor treated the costs on its books and in its return as ordinary and necessary business expenses. The evidence is that the petitioner regarded the drilling contracts as investments in oil payments resulting in gain or loss in capital transactions, and that the respondent allowed the cost of the wells, not as ordinary and necessary business expenses, but as base of a capital asset. In any event, the pleadings do not raise as an issue the deductibility of the drilling costs as ordinary and necessary business expenses, and such an issue raised for the first time upon brief will not be considered by the Board. *Jean Conrad*, 27 B. T. A. 741; *Hanby* v. *Commissioner*, 67 Fed. (2d) 125.

The method set forth in respondent's amended answer for determining the income of the transferor in 1932 under these oil payments is approved.

### Issue IV.

In his determination of the deficiency the respondent disallowed as an ordinary and necessary expense deduction the sum of $13,700.73 incurred by the transferor in the drilling of four oil and gas wells for others, upon the ground that the expense should be deferred and deducted in the year in which the contracts were completed. Article 334 (b) of Regulations 77, was cited as authority for his action.

Article 334 of Regulations 77 provides two methods for reporting income from long term contracts, a term defined therein as "building, installation, or construction contracts covering a period in excess of one year." It is plain that the contracts were not long term contracts as the term is used in the regulations, for the uncontradicted testimony here is that petitioner did not require more than about two weeks to drill an oil or gas well.

The force of this proof is apparently realized by respondent. On brief he confines his argument on the issue to statements that the cost must be capitalized and recovered through depletion deductions in subsequent years. The contention seems to be based upon the assumption that the wells were drilled for oil payments. The wells were drilled for cash in connection with petitioner's business of

drilling wells for others for hire, not for oil payments, and there will never be receipts from production subject to depletion. On this issue the petitioner is sustained.

### Issue V.

The costs of drilling Christian No. 1 and Todd B–1 and Todd B–2 were deducted by the transferor and allowed by the respondent as ordinary and necessary business expenses in 1931, the year in which the wells were completed. Oil payments, payable only out of production, were received as consideration for the drilling of the wells. The issue is whether the amounts received by the transferor in 1932 under the oil payments are subject to percentage depletion.

The contention of the respondent is that, since the investment of the transferor in the oil payments was recovered in full in 1931 by deductions taken and allowed as ordinary and necessary business expenses, there is no further cost to recoup by depletion. The petitioner argues that the taxpayer's right to percentage depletion depends solely upon receipt of income from oil and gas wells and is not, therefore, contingent upon the existence of cost basis.

Section 114 (b) (3) of the Revenue Act of 1932 allows as a deduction for depletion 27½ percent of the gross income from the property, but not in excess of 50 percent of the net income from the property and not less than an amount otherwise computed under the act. Provisions for allowance of depletion on other than a percentage basis are set forth in section 113.

No cases have been cited by either party in which the precise issue was presented for decision. The respondent urges that the point was involved and received consideration in *Columbia Oil & Gas Co.*, 41 B. T. A. 38. In that case there was a sale of oil and gas leases and tangible equipment located thereon for cash, with a reservation by the seller of overriding royalties until a specified amount was recovered. The seller's right to royalties represented an interest in oil and gas in place, the cost of which was recoverable by allowances for depletion. The question was whether the taxpayer was entitled to recover in the transaction the basis of the whole property, or whether a portion thereof should be allocated to the oil interest reserved, and, if so, the amount thereof. We held that a specified part of the cost of the leases should be allocated to the oil interest reserved in the transaction. Herein, however, the question is different. We do not have before us the year analogous to that considered in the *Columbia* case, *supra;* that is, we do not have the year in which the oil payments were acquired and the drilling costs, the consideration therefor, were charged and allowed as ordinary and necessary expense. We have for consideration no question, as in the *Columbia*

case, of allocating a base to oil payment rights, but only whether the statute gives the holder of such oil rights a right to percentage depletion. We think it does. Allowance for depletion upon the basis of a percentage of income under section 114 (b) (3) may exceed the base. The basis of computation is income, not cost or other basis. Percentage deduction may be allowed, though there is no basis with respect to the properties under consideration. I. T. 2327, VI C. B. 1, p. 18. *Mead Coal Co.* v. *Commissioner*, 106 Fed. (2d) 388, reversing *C. H. Mead Coal Co.*, 38 B. T. A. 1163. In *Sultana Oil Corporation*, 40 B. T. A. 1196, percentage depletion was allowed under section 114 (b) (3) of the Revenue Act of 1934, although intangible drilling and development costs had been deducted and allowed as expense, as herein. Such conclusion is contrary to respondent's contention that recovery of the investment by deduction as ordinary and necessary expense precludes allowance of depletion. In *Commissioner* v. *F. H. E. Oil Co.*, 102 Fed. (2d) 596; affd., 308 U. S. 104, on the authority of *Helvering* v. *Wilshire Oil Co.*, 308 U. S. 90, the court reversed a memorandum opinion of the Board, and held that the Commissioner properly deducted from gross income intangible drilling and development costs deducted by the taxpayer as expense, in determining the taxpayer's "net income," within the provisions of section 114 (b) (3), to the effect that the 27½ percentage depletion allowance should not exceed 50 percent of net income from the property. In other words, the drilling expenses deducted affected the percentage depletion only as an element of computation of net income, and did not, merely as such drilling expense deducted, forbid allowance of percentage depletion on any theory of duplicated base. In addition the record there showed, almost exactly as here, that an oil payment interest had been acquired by drilling done in the previous year, and that the drilling expense had in that year been deducted by the petitioner as ordinary expense and not restored to income by the respondent. Yet percentage depletion upon the proceeds from the oil payment interest was allowed in the taxable year. The petitioner here asks for just the same treatment. We think it must be accorded. On this point we sustain the petitioner.

The omissions of income derived in 1932 from the oil payments, the amounts of which are not in controversy, will be reflected in the recomputation to be filed under Rule 50.

Reviewed by the Board.

*Decision will be entered under Rule 50.*