CRAIGIE, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 21240–80.    Filed March 19, 1985.

*Frank W. Hardy*, for the petitioner.
*William L. Ringuette*, for the respondent.

FEATHERSTON, *Judge*: This case was assigned to Special Trial Judge Hu S. Vandervort pursuant to section 7456[1] and Rules 180 and 181. The Court agrees with and adopts his opinion which is set forth below.

OPINION OF THE SPECIAL TRIAL JUDGE

VANDERVORT, *Special Trial Judge*: This case is before the Court on petitioner's motion for partial summary judgment, filed on February 24, 1984, pursuant to Rule 121.

In the notice of deficiency issued to petitioner on August 26, 1980, respondent determined deficiencies in petitioner's Federal income tax as follows:

| Year | Deficiency |
| --- | --- |
| 1975 | $90,569 |
| (July 24—Dec. 31) | |
| 1976 | 229,699 |

---

[1] All section references are to the Internal Revenue Code of 1954 as amended, unless otherwise noted. All Rule references are to the Tax Court Rules of Practice and Procedure, unless otherwise noted.

These deficiencies were attributable to the following adjustments to income determined in the notice of deficiency:

|  | Taxable year 1975 (July 24—Dec. 31) | Taxable year 1976 (Year ended Dec. 31) |
|---|---|---|
| Net operating loss deduction decreased | $222,631 | $471,323 |
| Legal expense reduced | 1,397 | 0 |
| Charitable contributions decreased (increased) | (7,217) | 7,217 |
|  | 216,811 | 478,540 |

The net operating loss, which was decreased in the notice of deficiency issued to petitioner for 1975 and 1976, was a proportionate part of an asserted consolidated net operating loss carryover from 1973. In 1973, petitioner was a member of an affiliated group of corporations that filed a consolidated return. Petitioner seeks a summary adjudication of the issue as to whether Fidelity Corp. (Fidelity),[2] as the parent of the group, was the agent of petitioner authorized and empowered to sign a waiver (Form 4089) agreeing to adjustments which eliminated the consolidated net operating loss for 1973.

For the purposes of this motion, it is agreed that for a period prior to January 1, 1973, and until July 24, 1975, petitioner, then named Craigie, Mason-Hagan, Inc., was a wholly owned subsidiary of Fidelity. Fidelity filed a consolidated Federal income tax return for the calendar year 1973, and petitioner was a component member of the affiliated group. In that year Fidelity itself generated an asserted $25,268,518 net loss. Of that $25,268,518 net loss, $22,172,534 arose from a reported theft loss incurred by reason of an alleged multimillion-dollar swindle by Equity Funding Corp. of America (Equity).

In 1973, when Equity's alleged fraud was discovered, Fidelity owned a large number of the shares of stock of Equity. Because of the enormity of the fraud assertedly perpetrated by Equity, Fidelity's officers, directors, auditors, and accountants believed that there was no reasonable prospect of recovery of the loss sustained by Fidelity. As a consequence, Fidelity deducted the entire amount of $22,172,534 in computing its income in the consolidated return for 1973.

---

[2]The name of Fidelity has been changed to Drum Financial Corp., and that name was used in the execution of the waiver here in dispute.

On July 24, 1975, Fidelity sold petitioner to certain officers and employees of petitioner. Thereafter, petitioner filed separate Federal income tax returns. Petitioner carried over and used its allotted portion ($693,954) of the 1973 consolidated net operating loss reported in 1973 as a net operating loss on its separate returns for the years at issue. In so doing, it claimed net operating loss deductions of $222,631 and $471,323 for the years 1975 and 1976, respectively.

Fidelity's consolidated returns for the years 1971 through 1975 were audited by the Internal Revenue Service. The Equity theft loss claimed by Fidelity was disallowed in full for 1973, thereby reducing the consolidated net operating loss carrybacks and carryovers for Fidelity's consolidated taxable years 1971 through 1975. The disallowance of the $22,172,534 Equity loss in 1973 effectively eliminated the net operating loss carryover claimed by petitioner on its separate returns for 1975 and 1976.

The examinations of Fidelity's consolidated income tax returns for the years 1971 through 1975 and petitioner's returns for the years 1975 and 1976 were conducted concurrently. Petitioner was advised by respondent of the proposed disallowance of the 1973 deduction taken by Fidelity for the Equity loss.

On March 10, 1978, petitioner wrote to the District Director at Richmond, Virginia, and advised him of its interest in the audit of Fidelity's 1973 consolidated return. Petitioner further advised the District Director of the circumstances which, because of the conflict of interest, allegedly made it improper for Fidelity to act as agent for petitioner. The District Director answered petitioner's letter on April 21, 1978, stating, in part, that petitioner was entitled to secure a copy of any notice of deficiency and any notice and demand for payment issued to Fidelity. The District Director advised petitioner that Fidelity's tax liability had not been determined; that petitioner's request to be heard was premature; and, that once the audit of Fidelity had been concluded, the two cases would be associated and consideration would be given to petitioner's request at that time.

On December 28, 1979, respondent issued a notice of deficiency to Fidelity in which the claimed Equity loss was disallowed for the taxable year 1973. The notice failed to list

petitioner as one of the members of the affiliated group. On March 26, 1980, Fidelity signed Form 4089, Statutory Notice Statement-Waiver, agreeing that the $22,172,534 Equity loss was not deductible for 1973. The parties have stipulated that Fidelity, due to consolidated net operating losses incurred in various years, was unable to use its consolidated net operating loss for 1973 prior to the taxable year 1976.

On April 18, 1980, petitioner wrote to the District Director calling his attention to the March 10, 1978, letter and respondent's reply of April 21, 1978. On April 30, 1980, the District Director advised petitioner that the examination of Fidelity had been completed and that a copy of the notice of deficiency was being sent to petitioner in accordance with section 1.502–77(b), Income Tax Regs.

Respondent, in his notice of deficiency issued to petitioner on August 26, 1980, determined deficiencies in petitioner's Federal income taxes for the short taxable year July 24, 1975, to December 21, 1975, and the taxable year ended December 31, 1976, in the amounts shown above.

On Schedule 1-A "Explanation of Adjustments," which is attached to the notice, respondent stated the following with respect to the net operating loss deduction:

You do not have a net operating loss carryover deduction from the consolidated income tax return of Fidelity Corporation for the year ended December 31, 1973. You consented to filing a consolidated income tax return with Fidelity Corporation for that year and upon examination of the return, adjustments were made that eliminated the consolidated net operating loss. Fidelity Corporation signed a Statutory Notice Statement-Waiver on March 26, 1980 agreeing to the adjustments which eliminated the net operating loss. In accordance with regulation 1.1502–77, Fidelity Corporation was the sole agent for each subsidiary in the group and is duly authorized to act in its own name in all matters relating to the tax liability for the consolidated tax year. Accordingly, your taxable income for the years ending December 31, 1975 and December 31, 1976 is increased by $222,631.00 and $471,323.00, respectively.

On November 24, 1980, petitioner filed a timely petition in this Court in which it disputed all of the adjustments enumerated above except the reduced legal expenses. Respondent filed an answer on January 26, 1981. Petitioner subsequently filed the motion for partial summary judgment with supporting memorandum which is now before the Court.

Under Rule 121(b), a motion for summary judgment may be granted if there is no genuine issue as to any material fact and if the moving party is entitled to prevail as a matter of law. *Jacklin v. Commissioner*, 79 T.C. 340, 344 (1982); *Shiosaki v. Commissioner*, 61 T.C. 861, 863 (1974); see *Adickes v. Kress & Co.*, 398 U.S. 114, 157 (1970).

Upon careful consideration of the record before us, we find that the facts of this case are not in dispute, and that as a matter of law Fidelity was authorized to sign Form 4089 consenting to the disallowance of the $22,340,555 loss deduction claimed on the consolidated return for 1973. The motion for partial summary judgment will, therefore, be denied.

Section 1502 provides that "the Secretary or his delegate shall prescribe such regulations as he may deem necessary in order that the tax liability of any affiliated group of corporations making a consolidated return and of each corporation in the group * * * may be returned." Under this action, the regulations "set forth in elaborate detail how the tax is to be computed in such a return and prescribe the procedure whereby the election of the several corporations is to be manifested." *Davis Bros. Restaurant, Inc. v. Commissioner*, 60 T.C. 525, 532 (1973).

As a prerequisite to filing a consolidated return, the members of the consolidated group must agree to be bound by the regulations governing consolidated returns; section 1501 provides:

The making of a consolidated return shall be upon the condition that all corporations which at any time during the taxable year have been members of the affiliated group consent to all the consolidated return regulations prescribed under section 1502 prior to the last day prescribed by law for the filing of such return. The making of a consolidated return shall be considered as such consent * * *

By filing a consolidated return, petitioner thus consented to be bound by the consolidated return regulations. *Ilfeld Co. v. Hernandez*, 292 U.S. 62 (1934). As legislative regulations, those provisions have the force and effect of law unless they are arbitrary. *Union Electric Co. of Mo. v. United States*, 158 Ct. Cl. 479, 305 F.2d 850, 854 (1962); *Covil Insulation Co. v. Commissioner*, 65 T.C. 364, 374 (1975).

Section 1.1502–77(a), Income Tax Regs.,[3] provides that: "The common parent, for all purposes * * * shall be the sole agent for each subsidiary in the group, duly authorized to act in its own name in all matters relating to the tax liability for the consolidated return year." Further, except as to certain enumerated actions, not pertinent here, no subsidiary shall have the authority to act for or to represent itself in any tax matter. That is true "whether or not one or more of the subsidiaries have become or ceased to be members of the group at any time." These express provisions of the regulation clearly negate petitioner's argument that Fidelity was not authorized to bind petitioner when it agreed to the disallowance of the $22,172,534 as a deduction on the consolidated return for 1973.

Yet, petitioner argues that Fidelity was not authorized to act as its agent in respect of the audit of the consolidated return year 1973 on two grounds: (1) That the notice of deficiency issued to Fidelity for the consolidated return years 1971 through 1974 is invalid as to petitioner; and (2) that by its actions petitioner severed the agency relationship for the taxable year 1973, thereby causing the waiver signed by Fidelity to be ineffective as to it.

---

[3]Sec. 1.1502–77 is in pertinent part as follows:

Sec. 1.1502–77. Common parent agent for subsidiaries.

(a) *Scope of agency of common parent corporation.* The common parent, for all purposes (other than the making of the consent required by paragraph (a)(1) of section 1.1502–75, the making of an election under section 936(e), the making of an election to be treated as a DISC under section 1.992–2, and a change of the annual accounting period pursuant to paragraph (b)(3)(ii) of section 1.991–(1) shall be the sole agent for each subsidiary in the group, duly authorized to act in its own name in all matters relating to the tax liability for the consolidated return year. Except as provided in the preceding sentence, no subsidiary shall have authority to act for or to represent itself in any such matter. * * * [T]he common parent will file petitions and conduct proceedings before the Tax Court of the United States, and any such petition shall be considered as also having been filed by each such subsidiary. The common parent will file claims for refund or credit, and any refund will be made directly to and in the name of the common parent and will discharge any liability of the Government in respect thereof to any such subsidiary; and the common parent in its name will give waivers, give bonds, and execute closing agreements, offers in compromise, and all other documents, and any waiver or bond so given, or agreement, offer in compromise, or any other document so executed, shall be considered as having also been given or executed by each such subsidiary. * * * The provisions of this paragraph shall apply whether or not a consolidated return is made for any subsequent year, and whether or not one or more subsidiaries have become or have ceased to be members of the group at any time. Notwithstanding the provisions of this paragraph, the district director may, upon notifying the common parent, deal directly with any member of the group in respect of its liability, in which event such member shall have full authority to act for itself.

Assuming, arguendo, that the notice of deficiency was invalid, as to petitioner,[4] we do not think that, as a result, the waiver signed by Fidelity is likewise defective as to petitioner. We fail to see any such connection between the notice and the waiver.[5]

On March 26, 1980, several days before the 90-day period was to run, Fidelity signed the waiver agreeing to the immediate assessment of the deficiencies determined for the consolidated return years 1971 through 1974. In doing so, Fidelity agreed that the $22,172,534 Equity loss was not deductible for 1973. As a practical result, this agreement meant that there was no longer any consolidated net operating loss carryover to be allocated to petitioner for the 1975 and 1976 separate income tax years in issue before the Court.

Section 1.1502–77(a), Income Tax Regs., states that:

*the common parent in its name will give waivers * * * and execute * * * all other documents, and any waiver * * * so given, or agreement, * * * or any other document so executed, shall be considered as having also been given or executed by each such subsidiary. * * * The provisions of this paragraph shall apply * * * whether or not one or more subsidiaries have become or have ceased to be members of the group at any time.* [Emphasis added.]

By filing a consolidated return, petitioner agreed to be bound by such regulations. Moreover, petitioner agreed, according to the regulations, to let Fidelity serve as its agent for "all matters relating to the tax liability for the consolidated return year."[6]

Had fidelity agreed to the disallowance of the 1973 loss at any time prior to the issuance of the notice of deficiency, and signed a waiver or other agreement respecting that agree-

---

[4]Sec. 1.1502–77, Income Tax Regs., includes the following:

"Notwithstanding the provisions of this paragraph, any notice of deficiency, in respect of the tax for a consolidated return year, will name each corporation which was a member of the group during any part of such period (but a failure to include the name of any such member will not affect the validity of the notice of deficiency as to the other members)."

We need not decide whether the notice of deficiency in this case was valid as to petitioner.

[5]Respondent has conceded that, if the notice of deficiency was invalid as to petitioner, the Government is precluded from assessing petitioner for the liability asserted in the 1971–74 notice of deficiency mailed to Fidelity. Respondent states that:

"If the 90-day period expired without action, [respondent would not] be able to assess the tax based on the Fidelity notice against the petitioner and would not be able to demand payment from it for the taxes determined for the years covered in the Fidelity notice. As a result of the foregoing, since there would be no valid assessment against the petitioner, the respondent would be unable to file a lien or levy on any of petitioner's property with respect to Fidelity's taxes."

[6]See generally *Southern Pacific Co. v. Commissioner*, 84 T.C. 395 (1985).

ment, there would be no doubt as to the validity of that document. The common parent's broad agency power dictates that no other conclusion may be reached. Whether or not the notice of deficiency is ineffective as to one party or another does not have any bearing on the validity of the waiver as to the affiliated group. The waiver stands alone. We can see no justifiable difference between Fidelity's authority to sign a waiver before the notice of deficiency was issued and its authority to sign a waiver after the notice of deficiency was issued.

We think petitioner's second argument—that petitioner severed the agency relationship for 1973 thereby causing the waiver to be ineffective—is equally without merit. The fact that petitioner ceased to be a member of the group did not cause a termination of the agency relationship. The regulations provide that if a subsidiary has ceased to be a member of the group and if it files notice of such cessation with the District Director, the District Director may furnish the subsidiary with a copy of any notice of deficiency issued to the parent corporation. Sec. 1.1502–77(b), Income Tax Regs.[7] The District Director did so in this case in accordance with the correspondence reviewed above. But the regulation further provides that: "The filing of such written notification and request by a corporation shall not have the effect of limiting the scope of the agency of the common parent." Thus, Fidelity's authority to sign the waiver for the affiliated group for 1973 was not affected by petitioner's correspondence with the District Director.

The regulations do provide for a situation where the District Director may deal directly with a subsidiary, thereby causing the agency relationship between the parent and the subsidiary to cease. Section 1.1502–77(a), Income Tax Regs., provides:

---

[7]Sec. 1.1502–77(b), Income Tax Regs., provides as follows:

(b) *Notification of deficiency to corporation which has ceased to be a member of the group.* If a subsidiary has ceased to be a member of the group and if such subsidiary files written notice of such cessation with the district director with whom the consolidated return is filed, then such district director upon request of such subsidiary will furnish it with a copy of any notice of deficiency in respect of the tax for a consolidated return year for which it was a member and a copy of any notice and demand for payment of such deficiency. The filing of such written notification and request by a corporation shall not have the effect of limiting the scope of the agency of the common parent provided for in paragraph (a) of this section and a failure by such district director to comply with such written request shall not have the effect of limiting the tax liability of such corporation provided for in section 1.1502–6.

Notwithstanding the provisions of this paragraph, the district director may, upon notifying the common parent, deal directly with any member of the group in respect of its liability, in which event such member shall have full authority to act for itself.

Petitioner's correspondence with the District Director did not effect a termination of the agency relationship between Fidelity and petitioner under this regulation. The District Director's communications with petitioner did not indicate an intention by the Government to deal directly with petitioner on the issue of the 1973 taxable year loss. Moreover, to terminate the agency relationship, the regulations require that notification be given by the District Director to the common parent. Petitioner has not shown that any such notification was ever given. Fidelity remained the authorized agent of petitioner for Federal tax purposes relating to the taxable year 1973. Therefore, we find that the waiver was duly executed by Fidelity as an authorized agent of petitioner and both Fidelity and petitioner are bound by its terms.

We recognize that our conclusion that Fidelity's waiver is valid produces a result that may be disappointing to the interests that acquired petitioner in July 1975, when petitioner's affiliation with Fidelity was terminated. The privilege of electing to file consolidated returns, however, is limited to corporations with a carefully defined parent-subsidiary relationship. As in this case, the relationships between component members of a group may change and their interests may become diverse. Practical problems in the administration of the tax laws would arise if each corporation, after terminating its affiliation with the group, could pursue its own interests with respect to the handling of consolidated returns filed during the period of affiliation. For this reason, no doubt, the regulations precisely define and carefully limit the circumstances in which a parent corporation's agency authority may be terminated. An election to file a consolidated return carries with it burdens as well as benefits and, as we have stated in other contexts, each member of the group must "take the bitter with the sweet." *Georgia-Pacific Corp. v. Commissioner*, 63 T.C. 790, 802 (1975); *First National Bank in Little Rock v. Commissioner*, 83 T.C. 202, 217 (1984).

Petitioner's motion cannot be granted.

To reflect the foregoing,

*An appropriate order will be issued.*