MALONE & HYDE, INC., A DELAWARE CORPORATION, SUCCESSOR BY MERGERS TO MALONE & HYDE, INC., A TENNESSEE CORPORATION, AND SUBSIDIARIES, AND PITTCO HOLDINGS CORPORATION, A DELAWARE CORPORATION, AND SUBSIDIARIES, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Malone & Hyde, Inc.
Docket No. 24978-90
United States Tax Court
T.C. Memo 1992-661; 1992 Tax Ct. Memo LEXIS 703; 64 T.C.M. (CCH) 1309; November 16, 1992, Filed *703 An appropriate decision will be entered for petitioner. For Petitioner: Mark E. Burget, Dee A. Replogle, Jr., and John N. Hermes. For Respondent: Vallie C. Brooks. TANNERWALD TANNERWALD MEMORANDUM OPINION TANNENWALD, Judge: Respondent determined deficiencies in the Federal income tax against petitioner as follows: [1]
Taxable Year Ended
Deficiency
6/27/81
$    646,475
6/26/82
435,847
6/25/83
622,109
6/30/84
1,714,747
*704 Respondent by answer seeks increases in deficiencies as follows: Taxable Year Ended
Deficiency
6/26/82
$ 11,567,988
6/25/83
133
Petitioner claims overpayments as follows: Taxable Year Ended
Overpayment
6/27/81
$     92,482
6/26/82
107,593
6/25/83
1,455,635
6/30/84
739,380
The only issue before us at this stage of the proceedings is whether certain consents (Form 872-A) operated to extend the period of limitations sufficiently to support the conclusion that the deficiency notice was timely. [2]
All of the facts pertinent to the issue have been stipulated and are so found. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioner (hereinafter sometimes referred to as MHD) is a Delaware corporation with its principal office in Memphis, Tennessee, at the time it filed its petition herein. For each of its taxable years ended June 27, 1981, *705 June 26, 1982, June 25, 1983, and June 30, 1984, Malone & Hyde, Inc. (MHTN), a Tennessee corporation, was the common parent of an affiliated group of corporations, within the meaning of section 1504(a), [3] and the aforesaid returns filed by it were consolidated returns. In July of 1984, all shares of MHTN were acquired by Pittco Acquisition Corporation (PAC) through a cash tender offer. PAC was a Delaware corporation and a wholly owned subsidiary of Pittco Holdings Corporation, EIN 62-1215905 (PHC). PAC also owned all the issued and outstanding shares of Pittco Merger Corporation (PMC). In August of 1984, PMC merged with and into MHTN in a transaction described in section 368(a)(1)(A). MHTN timely filed Consolidated U.S. Corporation Income Tax Returns on Form 1120 for its taxable years ended June 27, 1981, June 26, *706 1982, June 25, 1983, and June 30, 1984, on December 15, 1981, December 15, 1982, March 12, 1984, and October 16, 1984, respectively, with the Director of the Internal Revenue Service Center, Memphis, Tennessee. In May of 1986, PAC formed five new Delaware subsidiary corporations, i.e., Auto Shack,Inc. (AS), M & H Food Companies, Inc. (Foods), M & H Drugs, Inc. (Drugs), M & H Sporting Goods, Inc. (SG), and MHD. In June of 1986, PAC contributed shares of MHTN stock to each of the five new subsidiaries. In June of 1986, MHTN adopted a plan of complete liquidation under section 332 and section 1.1502-34, Income Tax Regs. On June 18, 1986, MHTN distributed the assets and liabilities of its drugs division to Drugs, of its sporting goods division to SG, and of its services division to MHD. On July 9, 1986, MHTN distributed the assets and liabilities of its auto parts division to AS and thereafter on such date, merged into Foods pursuant to a statutory merger under section 368(a)(1)(A) and the laws of the States of Delaware and Tennessee, with Foods as the surviving corporation. On July 21, 1986, PHC merged downstream into PAC pursuant to a statutory merger under section 368(a)(1)(A) *707 and the laws of the State of Delaware, with PAC as the surviving corporation. In February 1987, PAC merged downstream into MHD pursuant to a statutory merger under section 368(a)(1)(A) and the laws of the State of Delaware, with MHD as the surviving corporation. In late 1986, an informal claim for refund was submitted to respondent for taxable years 1981 and 1982 of MHTN based on work incentive (WIN) credits not claimed on the returns as filed, but claimed based on a recertification study conducted by a third party in 1986. Subsequently, on March 17, 1987, formal Protective Claims were filed with respondent by petitioner, on Forms 1120X for MHTN's taxable years 1981 and 1982, seeking WIN credits. In December 1988, Foods merged into MHD pursuant to a statutory merger under section 368(a)(1)(A) and the laws of the State of Delaware, with MHD as the surviving corporation. Respondent initiated the examination of the Forms 1120 of MHTN filed for the taxable years 1981 and 1982 with an opening conference held on May 23, 1984. During such examination, respondent also commenced the examination of the Forms 1120 of MHTN filed for 1983 and 1984 and the Form 1120 of PHC filed for 1984 *708 using a different case manager and examination team. Such examinations were conducted by respondent as part of the Coordinated Examination Program (CEP). At the commencement of respondent's examination for the cycle 1981 and 1982, representatives for MHTN and its officers were contesting a captive insurance premium deduction adjustment and investment tax credit (ITC)/depreciation adjustments proposed by respondent in respondent's examination of MHTN's tax returns for 1978, 1979, and 1980. Deductions for premiums paid to the same captive insurance company, and similar deductions for ITC/depreciation had been claimed by MHTN on its Forms 1120 filed for 1981 and 1982. On December 19, 1984, respondent issued a statutory notice of deficiency to MHTN disallowing the captive insurance premium deductions, certain investment tax credits, and certain depreciation deductions for 1978, 1979, and 1980. In response, MHTN filed a petition for a redetermination of such deficiencies with the United States Tax Court on March 14, 1985. On November 2, 1989, this Court held (Malone & Hyde, Inc. v. Commissioner, T.C. Memo. 1989-604) that MHTN was not entitled to deduct *709 as an insurance expense "premiums" paid to its captive insurance company for 1979 and 1980. After rendering the opinion, this Court granted MHTN's motion to reopen the record for the purpose of determining whether MHTN was entitled to deduct any of such amounts disallowed based on the brother-sister corporation issue discussed in the opinion of the Court of Appeals for the Sixth Circuit in Humana Inc. v. Commissioner, 881 F.2d 247 (1989), revg. 88 T.C. 197 (1987). A further trial on the brother-sister issue was held in the MHTN case with the parties filing briefs thereon in November 1990. By the latter part of 1986, respondent's examination team had advised the representatives of MHTN of several proposed adjustments to MHTN's tax returns for prior periods (including matters ultimately raised in the statutory notice of deficiency issued in this case, as well as the stock option issue raised affirmatively by respondent in the answer in this case). Respondent's examination team and the representatives reached an agreement on several adjustments proposed by respondent's examination team and on December 30, 1986, a payment of *710 $ 2,552,359 was made to the District Director of Internal Revenue at Nashville, Tennessee, on behalf of MHTN as part payment of deficiencies agreed to for the taxable periods 1981 through 1984. In connection with respondent's examination of the consolidated Federal income tax returns filed by MHTN for the years in issue, the following Consents to Extend the Time to Assess Tax (Form 872) were executed: Date To
Which
Person Executing on
Date Executed For
Statute
Year
Behalf of Taxpayer
Taxpayer
Respondent
Extended
6/81
Larry J. Hardy, POA
7/11/84
7/13/84
12/31/85
J. R. Hyde, III, Pres.
7/10/85
7/11/85
12/31/86
J. R. Hyde, III, Pres.
6/27/86
6/27/86
12/31/87
J. R. Hyde, III, Pres.
8/17/87
8/21/87
12/31/88
Larry J. Hardy, POA
9/7/88
9/9/88
6/30/89
John E. Moll, Pres.
3/27/89
3/28/89
12/31/90
6/82
J. R. Hyde, III, Pres.
7/10/85
7/11/85
12/31/86
J. R. Hyde, III, Pres.
6/27/86
6/27/86
12/31/87
J. R. Hyde, III, Pres.
8/17/87
8/21/87
12/31/88
Larry J. Hardy, POA
9/7/88
9/9/88
6/30/89
John E. Moll, Pres.
3/27/89
3/28/89
12/31/90
6/83
J. R. Hyde, III, Pres.
10/23/86
10/23/86
12/31/87
J. R. Hyde, III, Pres.
8/17/87
8/21/87
12/31/88
Larry J. Hardy, POA
9/7/88
9/9/88
6/30/89
John E. Moll, Pres.
3/27/89
3/28/89
12/31/90
6/84
J. R. Hyde, III, Pres.
3/23/87
3/25/87
6/30/88
Larry J. Hardy, POA
2/1/88
2/8/88
12/31/88
Larry J. Hardy, POA
9/7/88
9/9/88
6/30/89
John E. Moll, Pres.
3/27/89
3/28/89
12/31/90
*711 All of the Forms 872 referred to in the preceding paragraph were prepared by representatives of respondent. With the exception of the Form 872 executed by John E. Moll on March 27, 1989, all of the Forms 872 for the periods 1981 through 1984 listed the taxpayer as "Malone & Hyde, Inc. and Subsidiaries, EIN 62-0279520" and were executed by J. R. Hyde, III, as president, or by Larry J. Hardy (Hardy) pursuant to a power of attorney granted by MHTN. The Form 872 executed on March 27, 1989, by John E. Moll for each of the periods 1981 through 1984 listed the taxpayer as "Malone & Hyde, Inc. (EIN 62-1279199), a Delaware Corporation, successor by Mergers to Malone & Hyde, Inc. (EIN 62-0279520), a Tennessee Corporation, and Subsidiaries" and was executed by Mr. Moll as president of MHD. On March 27,1989, John E. Moll, in his capacity as president of Malone & Hyde, Inc. a Delaware corporation, successor by merges to Malone & Hyde, Inc. (EIN 62-0279520), a Tennessee Corporation, and subsidiaries executed an agreement on Form 977 to extend the time to assess the liability at law or in equity to December 31, 1990, for any income tax found to be due from MHTN for the taxable years 1981 through *712 1984. On March 27, 1989, John E. Moll, in his capacity as president of MHD, executed an agreement on Form 2045 in which MHD agreed to assume and pay the amounts of any Federal income tax finally determined or judged to be due and payable by MHTN and its subsidiaries for the taxable years 1981 through 1984. Each of the officers or representatives executing the Forms 872 on behalf of MHTN, after its merger with and into Foods, believed he had the corporate power to execute such an agreement extending the applicable statute of limitations, and intended to do so. The representative executing each of such agreements for respondent had the authority to extend the applicable statute of limitations and believed that the officer or representative executing for the taxpayer had the authority to do so for the taxpayer or its successors by merger. On May 13, 1987, respondent issued the examination report (30-day letter) for the periods of MHTN for 1981 and 1982, and on August 7, 1987, respondent issued the 30-day letter for the periods 1983 and 1984 for MHTN. By letter dated September 4, 1987, a protest was filed with the District Director of the Internal Revenue Service at Nashville, Tennessee, *713 to the revenue agent's reports covering the examination of the consolidated tax returns of MHTN for the taxable periods 1981 through 1984. In an October 7, 1987, protest, the representatives stated that the taxpayer had previously agreed to a portion of the proposed adjustments, but the taxpayer did not agree with the remaining proposed adjustments in the protest. The protest did not contend that the statute of limitations on assessment had expired on any of the periods involved. As required by sections 1.332-6(b) and 1.368-3, Income Tax Regs., respondent was notified of the July 9, 1986, merger of MHTN with and into Foods by the filing of a Form 966, Corporate Dissolution or Liquidation, which set forth the dissolution of MHTN by merger with and into Foods. The Form 966 was filed with the Internal Revenue Service Center in Memphis, Tennessee, on October 24, 1986, and correctly set forth the Employer Identification Number of MHTN (62-0279520), identified the Memphis Service Center as the center where the last income tax return had been filed, and attached copies of (1) the minutes of a special meeting of the board of directors of MHTN, in which the plan of liquidation and the *714 plan and agreement of merger between MHTN and Foods were adopted,and (2) the plan and agreement of merger of MHTN into Foods, which specifically sets forth the provision that Foods will be the surviving company and that "the separate corporate existence of [MHTN] shall cease forthwith upon the Effective Date". For the taxable year ended in August 1986, PAC filed a consolidated Federal income tax return on Form 1120 for the affiliated group of corporations of which PAC was the common parent. The Form 1120 for the year ended in August 1986 was timely filed on May 15, 1987. The return included notices of the merger and dissolution of MHTN pursuant to the provisions of section 1.332-6(b), Income Tax Regs. These notices included a "STATEMENT OF LIQUIDATION OF MALONE & HYDE, INC., A TENNESSEE CORPORATION, FID #62-0279520, AS REQUIRED UNDER SEC. 1.332-6(B)", Income Tax Regs., and set forth that: (e) As the final liquidating distribution, on July 9, 1986, [MHTN] merged into its remaining shareholder, M&H Foods Companies, Inc. ("Foods") FID #62-1279241, with Foods as the surviving corporation. In addition, the return included a notice of the merger as required by section 368(a)(1)(A) *715 and section 1.368-3, Income Tax Regs. The return also included a copy of the certificate of agreement of merger of MHTN into Foods, from the State of Delaware, dated July 9, 1986, and certificates executed by the Secretaries of Foods and MHTN that the plan had received the necessary shareholder and corporate approvals. The merger of PHC with and into PAC was similarly disclosed in the return. By letter dated October 24, 1986, PAC notified the District Director in Nashville, Tennessee, pursuant to the requirements of section 1.1502-77(d), Income Tax Regs., that PHC had been dissolved as part of its merger with and into PAC, and designated PAC as the new common parent of the affiliated group. Respondent replied by a handwritten note dated October 27, 1986, saying, in part, that "IF WE HAVE ANY QUESTIONS OUR TECHNICAL DEPARTMENT WILL CONTACT YOU WITHIN 10 DAYS. THANK YOU." On or about October 24, 1986, a Form 966 was filed with respondent disclosing that PHC had merged with and into its subsidiary, PAC. By letter dated July 21, 1987, C. B. Harmon, Chief, Correspondence Section, Internal Revenue Service, Memphis, Tennessee, was advised that PHC had merged into PAC. A Form 966 *716 was filed on March 16, 1987, showing the dissolution by merger of PAC with and into MHD, and attaching copies of approving minutes, and a "Certificate of Ownership and Merger Merging Pittco Acquisition Corporation with and into Malone & Hyde, Inc.", certified by the Secretary of State of Delaware. MHD sent a letter to the District Director in Nashville, Tennessee, dated March 12, 1987, advising respondent, pursuant to the provisions of section 1.1502-77(d), Income Tax Regs., of the dissolution by merger on February 11, 1987, of PAC into MHD, and designating MHD as the new common parent. The consolidated Federal income tax return of the affiliated group of corporations of which PAC was the common parent was filed with and received by respondent on May 18, 1988, for the taxable year ended August 29, 1987. The return disclosed the merger of PAC with and into MHD. On June 1, 1988, MHD executed an agreement and plan of merger with Fleming Companies, Inc., which agreement stated at schedule 2.18 that MHD had extended to December 31, 1988, the statute of limitations for the taxable years ending June 27, 1981, June 26, 1982, June 25, 1983, and June 30, 1984, and that matters pertaining *717 to tax returns for the taxable years 1978 through 1980 were currently pending before the United States Tax Court. On its consolidated Form 1120 filed for the taxable period ending in July 1988, MHD reported a net operating loss of $ 19,255,462 for which MHD filed a claim for tentative refund on Form 1139 on June 19, 1989, carrying back the loss to the tax periods ending in August 1986 and August 1987. The carryback resulted in tentative refunds of $ 3,534,768 for 1986 and $ 2,349,728 for 1987. MHD also filed a tentative refund claim on Form 1139 on June 19, 1989, for a carryback of investment credit and jobs credit from the tax period ending in August 1986 to MHTN's tax period ending in June 1984, which carrybacks were claimed to be available as a result of the net operating loss carryback from the period ending in July 1988 to the period ending in August 1986. As a result of MHD's claim, respondent tentatively refunded the amount of $ 739,380 to MHD for MHTN's tax period ending in June 1984. The Form 1139 filed June 19, 1989, stated as follows: The parent company of the group which filed the 6/30/84 return, Malone & Hyde, Inc., a Tennessee corporation (MHTN), FID #62-0279520, *718 is NOT the same as the parent of the group which filed the 7/14/88 return, Malone & Hyde, Inc., a Delaware corporation (MHDL) [MHD herein], FID #62-1279199. However, the ITC and TJTC which is being carried BACK to 6/30/84 from 8/30/86 WAS earned by MHTN (and other corporations which were members of the 6/30/84 group.) On October 20, 1986, MHTN filed a claim for refund on Form 1120X in the amount of $ 1,455,635 for the taxable year ended in June 1983 based on a general business credit carryback from taxable year ended in August 1985. After the protests had been filed for the taxable years of MHTN ended in June 1981, June 1982, June 1983, and June 1984, see supra p. 10, the representatives of MHTN held telephone conferences with respondent's Appeals Office in Birmingham, Alabama, resulting in such appeals office returning the case to respondent's examining officers in Memphis, Tennessee, for further consideration of the issues involved. Upon further review by respondent's examining officers, the District Director revised his 30-day letters. Upon receiving the revised 30-day letter, the authorized representatives of the taxpayers asked for consideration of the remaining *719 adjustments by the Appeals Office and a hearing was held on November 9, 1989. In a supplemental protest dated November 8, 1989, the representatives for the first time alleged that since the filing of the protests dated September 4, 1987, the statute of limitations had expired. Taxpayer's position was stated as follows: Forms 872 filed by MHTN subsequent to its merger into Foods on 7/9/86 are invalid. Such filings did not extend the time period during which additional taxes could be assessed. * * * The execution by MHD officers of Forms 977 and 2045 during April, 1989 were invalid since they were executed after the expiration of the statute of limitations. Respondent mailed the notice of deficiency to petitioner on August 8, 1990. The issue before us is whether the 3-year period of limitations under section 6501(a) had expired at the time the deficiency notice was mailed. Resolution of this issue turns upon the validity of various consents to extend that period. After threading our way through the maze of corporate reorganizations, we think the critical question is the validity of the consents executed by Hardy on September 7, 1988. If those consents are invalid, then all *720 subsequent consents were executed after the period of limitations had expired and would not be entitled to recognition. Diamond Gardner Corp. v. Commissioner, 38 T.C. 875, 881 n.6 (1962); Hicks v. Commissioner, T.C. Memo., 1991-564. [4]
The underlying facts are not in dispute. Hardy was associated *721 with the accounting firm which prepared MHTN's tax returns. At no time was he an officer, director, or shareholder of petitioner or MHTN. The Hardy consents were executed on September 7, 1988, by Hardy in the name of "Malone & Hyde, Inc. and Subsidiaries" and identified with "EIN 62-0279520", which was the employer identification number of MHTN. They were executed by respondent on September 9, 1988. By their terms, they extended the period of limitations, which was scheduled to expire on December 31, 1988, to June 30, 1989. Hardy executed the consents pursuant to a power of attorney given to him by MHTN on January 30, 1986. At the time the consents were executed (September 7, 1988), MHTN had merged into Foods (on July 9, 1986), but the merger of Foods into petitioner had not occurred (it took place in December 1988). Respondent makes a two-fold primary argument: (1) The Hardy consents were executed on behalf of petitioner, which respondent asserts took over the power of attorney under Delaware law, see infra p. 19, and (2) if we conclude that we cannot so hold, we should reform the consents to achieve that result pursuant to our opinion in Woods v. Commissioner, 92 T.C. 776 (1989). *722 In the alternative, respondent asks us to decide that MHTN continued in existence and that the power of attorney to Hardy continued in full force and effect, on the theory that an "action or proceeding" existed at the time of the merger of MHTN into Foods within the meaning of section 261 of the Delaware General Corp. Law (1974), see infra p. 22. Petitioner disputes respondent's various assertions on the grounds that the merger of MHTN into Foods terminated the power of attorney to Hardy for all purposes, that consequently the provisions of Delaware law, upon which respondent relies, have no application, that, in any event, there was no "action or proceeding" pending at the time of the merger, and that the instant case does not fall within the scope of Woods v. Commissioner, supra.
For the reasons hereinafter set forth, we agree with petitioner. Initially, we deal with the continued validity of the power of attorney given to Hardy. Neither party disputes the proposition that resolution of the issue thus presented should be determined under State law. Sanderling, Inc. v. Commissioner, 66 T.C. 743, 750 (1976), *723 affd. on this issue 571 F.2d 174 (3d Cir. 1978). Furthermore, they agree that Delaware law applies. The usual rule is that a power of attorney terminates upon the death or incapacity of the principal. Restatement, Agency 2d, sec. 120 (1958). [5] This rule has been applied to corporations, which ceased to exist, in Oklahoma Gas Co. v. Oklahoma, 273 U.S. 257, 259-260 (1927), wherein the Supreme Court stated: It is well settled that at common law and in the federal jurisdiction a corporation which has been dissolved is as if it did not exist, and the result of the dissolution cannot be distinguished from the death of a natural person in its effect. * * * But corporations exist for specific purposes, and only by legislative act, so that if the life of the corporation is to continue even only for litigating purposes it is necessary that there should be some statutory authority for the prolongation. The matter is really not procedural or controlled by the rules of the court in which the litigation pends. It concerns the fundamental law of the corporation enacted by the State which brought the corporation into being. *724 See also United States v. Line Material Co., 202 F.2d 929, 931 (6th Cir. 1953), and the cases cited thereat. That MHTN ceased to exist by way of merger prior to the time that the Hardy consents were executed is beyond dispute; MHTN was "drowned" into Foods, the surviving corporation. Helvering v. Metropolitan Edison Co., 306 U.S. 522, 529 (1939). [6] Thus, under the usual rule of agency, Hardy was no longer authorized to act on behalf of MHTN. Respondent, recognizing that, as a general proposition (see infra pp. 22-24 for respondent's argument in respect of an exception), MHTN ceased to exist, seeks to salvage the Government's position by arguing that the power of attorney to Hardy survived the merger and became a power of attorney granted by petitioner by virtue of section 259(a), Del. Gen. Corp. Law (1974). That section provides that, in the case of a merger, "the rights, privileges, powers and franchises of each of said corporations * * * shall be vested in the corporation surviving or resulting from such merger or consolidation". We are not persuaded that this provision abrogates the usual rule as to the *725 termination of an agency conferred by a power of attorney. The words "rights, privileges, powers and franchises" encompass substantive elements such as contract rights, e.g., a collective bargaining agreement which was held to survive in Fitzsimmons v. Western Airlines, Inc., 290 A.2d 682 (Del. Ch. 1972), a case heavily relied upon by respondent and clearly distinguishable. In our opinion, a power of attorney does not embody the substantive element contemplated by the Delaware statute. Moreover, Foods, into which MHTN was merged, had not been merged into petitioner at the time the Hardy consents were executed so it is difficult to understand how the Delaware statute could come into play in order to accomplish respondent's objective. Finally, we note that the Hardy consents were not executed in the name of petitioner. Despite the identity of name between petitioner and MHTN, the clear identification by EIN number of MHTN as the corporation on whose behalf the consents were executed negates any other conclusion, particularly in view of the facts that respondent prepared the consent forms and knew that the merger of MHTN into Foods had taken place. *726 Respondent's reliance on Phillips v. Lyman H. Howe Films Co., 33 F.2d 891 (3d Cir. 1929), Warner Collieries Co. v. United States, 63 F.2d 34 (6th Cir. 1933), and Illinois Addressograph Mfg. Co. v. Commissioner, 31 B.T.A. 498 (1934), is misplaced. None of these cases involved a power of attorney issued to a third party by a corporation that was not in existence at the time it was exercised. All involved officers of the surviving corporation, who were clearly authorized to act and were acting on behalf of that corporation by executing a consent in its name in respect of taxes of another corporation which it had absorbed. The same situation also existed in Rev. Rul. 59-399, 1959-2 C.B. 488, and G.C.M. 7310, *727 IX-1 C.B. 237 (1930), which respondent has called to our attention. In all of the situations involved, the underlying authority to act existed which is not the case herein. Moreover, the emphasis on the intent of the parties reflected in those cases needs to be evaluated in the context of the existence of that authority and the lack of knowledge of the corporate restructuring on the part of respondent (or at least the failure of the cases to indicate the presence or absence of such knowledge). Cf. Union Shipbuilding Co. v. Commissioner, 43 B.T.A. 1143 (1941). We deal next with respondent's entreaty that we reform the consents to encompass petitioner as the entity on whose behalf the consents were executed, under the reform principle embodied in Woods v. Commissioner, supra. That principle may be available to cure defects in forms which the parties had the power to execute, but it cannot be extended to create authority that otherwise would not exist. Moreover, here again, we note that petitioner was not in the picture at the time the consents were executed; the merger of Foods into petitioner did not take place *728 until 3 months later. This fact also disposes of respondent's attempt to invoke section 1.1502-77(a), Income Tax Regs., which provides broad authority to a common parent to act on behalf of each subsidiary in the group. That section has no application to the succession of the common parent which has ceased to exist. [7] Respondent's reliance on Craigie, Inc. v. Commissioner, 84 T.C. 466 (1985), where we held a common parent could bind a subsidiary after the latter had left the group, is so obviously misplaced that it requires no further comment.
We turn to respondent's alternative contention that MHTN continued in existence and, consequently, the power of attorney continued in effect by virtue of section 261, Del. Gen. Corp. Law (1974), which provides: Any action or proceeding, *729 whether civil, criminal or administrative, pending by or against any corporation which is a party to a merger or consolidation shall be prosecuted as if such merger or consolidation had not taken place, or the corporation surviving or resulting from such merger or consolidation may be substituted in such action or proceeding. Respondent's reliance on this statutory provision is predicated on the following factors: (1) A statutory notice had been issued and litigated in this Court by MHTN, in respect of earlier years and involving the same issues, see supra pp. 6-7; (2) the filing of a refund claim in respect of some of the years at issue, see supra pp. 13-14; and (3) the filing of a protest and discussions with respondent's representatives in respect of the years involved herein, see supra pp. 14-15. These factors, according to respondent, are sufficient to justify the conclusion that an "action or proceeding" existed at the time of the merger of MHTN into Foods with the result that Hardy was authorized to execute the consents in question on September 7, 1988. We disagree. The fact that there was an action or proceeding involving the same taxpayer and the same issues *730 for other years is irrelevant to the issue before us. It has long been established that the liability for income taxes is separate and distinct for each year. Commissioner v. Sunnen, 333 U.S. 591, 598 (1948). The claims for refund and the protest in respect of the years before us were filed long after the merger of MHTN into Foods and are also irrelevant; they cannot be relied upon to create retroactively an "action or proceeding" that did not exist at the critical point in time. The only activity that was occurring at the time of the merger of MHTN into Foods was an ongoing audit by respondent's agents; the 30-day letter herein was not issued until May 1987, see supra p. 10, 10 months after the merger of MHTN into Foods. We are not persuaded by respondent's assertion that such an examination is sufficient to constitute an "administrative" proceeding within the meaning of section 261. The cases relied upon by respondent involve elements of far more significance than the mere existence of an audit and are distinguishable. American Standard Watch Co. v. Commissioner, 229 F.2d 672, 675 (2d Cir. 1956) (a claim for *731 refund had been filed); Bahen & Wright, Inc. v. Commissioner, 176 F.2d 538 (4th Cir. 1949) (notice of deficiency had been issued); Bared & Cobo Co. v. Commissioner, 77 T.C. 1194 (1981) (same); Field v. Commissioner, 32 T.C. 187 (1959), affd. 286 F.2d 960 (6th Cir. 1960) (several elements); American Police & Fire Foundation, Inc. v. Commissioner, T.C. Memo. 1981-704 (notice of deficiency). We conclude that the circumstances of this case bring it within the ambit of Wheeler's Peachtree Pharmacy, Inc. v. Commissioner, 35 T.C. 177 (1960), and Paramount Warrior, Inc. v. Commissioner, T.C. Memo. 1976-400, affd. by court order 608 F.2d 522 (5th Cir. 1979); see also Badger Materials, Inc. v. Commissioner, 40 T.C. 1061 (1963). [8] We hold that MHTN did not continue to exist under section 261, Del. Gen. Corp. Law (1974), after its merger into Foods. *732 Respondent has sought to persuade us by additional arguments, based upon the intent of the parties, that Hardy's authority was never disavowed and that the actions of petitioner and the various related corporate entities, taken upon the assumption that the necessary authority existed, amount to ratification of the consent. [9] While these elements might well be significant in another context, neither intent nor failure to disavow nor ratification can create a power that by law does not and cannot exist. We hold that the Hardy consents were not authorized *733 and therefore did not extend the period of limitations. Consequently, the deficiency notice was not timely issued and assessment is barred by the statute of limitations. An appropriate decision will be entered for petitioner. Footnotes
1. The deficiencies are those of Malone & Hyde, Inc., a Tennessee corporation, in respect of which petitioner, as successor to the Tennessee corporation, concedes direct liability to the extent that such deficiencies are not barred by the statute of limitations and are correctly determined. The deficiency notice determined a zero deficiency against Pittco Holdings Corporation for its taxable year ended Aug. 25, 1984; by order dated Sept. 23, 1992, the case was dismissed for lack of jurisdiction in respect of such taxable year. Martz v. Commissioner, 77 T.C. 749↩ (1981).
2. This issue was severed from other issues by order of the Chief Judge dated Aug. 7, 1992.↩
3. Unless otherwise indicated, all statutory references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
4. Respondent has made no claim that petitioner is statutorily liable other than by virtue of sec. 259, Del. Gen. Corp. Law (1974), see infra p. 19. For the elements involved in determining other bases of liability, i.e., as a transferee at law or under sec. 6901, see Southern Pacific Transportation v. Commissioner, 84 T.C. 367 (1985), and the cases discussed therein; see also Milk Bottle Exchange, Inc. v. Commissioner, 43 B.T.A. 33 (1940); Transport Mfg. & Equipment Co. v. Commissioner, T.C. Memo. 1972-63, affd. 480 F.2d 448↩ (8th Cir. 1973).
5. The comment to sec. 120, Restatement, Agency 2d (1958), contains the following statement: Agency is a personal relation, necessarily ending with the death of the principal; the former principal is no longer a legal person with whom there can be legal relations. One cannot act on behalf of a nonexistent person.↩
6. See also Paramount Warrior, Inc. v. Commissioner, T.C. Memo. 1976-400, affd. by court order 608 F.2d 522↩ (5th Cir. 1979).
7. Sec. 1.1502-77(d), Income Tax Regs.↩, which deals with the situation where the common parent ceases to exist, by its terms, encompasses only the role of other then-existing members of the affiliated group.
8. The comparable Tennessee statutes, Tenn. Code Ann. sec. 48-905(2)(e) (1970), contain the phrase "existing claim" which, if it were applicable, might bring this case within the ambit of Brannon's of Shawnee, Inc. v. Commissioner, 71 T.C. 108↩ (1978). However, respondent has conceded, and we agree, that Delaware law controls, given the fact that both Foods and petitioner were Delaware corporations.
9. Respondent specifically renounces any claim of estoppel, a position which comports with the fact that the various transactions were fully disclosed to respondent who prepared the consents. Paramount Warrior, Inc. v. Commissioner, T.C. Memo. 1976-400, affd. by court order 608 F.2d 522 (5th Cir. 1979); Union Shipbuilding Co. v. Commissioner, 43 B.T.A. 1143, 1146-1147↩ (1941).